EX PARTE RAMÓN G. HERNÁNDEZ LAUREANO, peticionario.

Núm. 114.—*Sometido:* Febrero 20, 1939. *Resuelto:* Febrero 20, 1939.*

---
\* La opinión fué dada en marzo 7, 1939.

*Santos P. Amadeo, Lionel Fernández Méndez, Benjamín Ortiz, Alejandro Romanacce* y *Angel D. Marchand Paz,* abogados del peticionario; *R. A. Gómez, Fiscal,* abogado del querellado el Alcaide de la Cárcel de Distrito de San Juan, Puerto Rico.

EL JUEZ ASOCIADO SEÑOR TRAVIESO emitió la opinión del tribunal.

Los hechos y. circunstancias excepcionales del presente caso pueden resumirse así:

El día 22 de abril de 1938 el peticionario, joven de poco más de dieciséis años de edad, fué arrestado y recluído en el cuartel de la Policía Insular en Santurce, por un supuesto delito de violación. El arresto se efectuó como a las 10 p. m. Al día siguiente por la mañana el peticionario fué conducido a presencia de la Corte de Distrito de San Juan, presidida por el Hon. Marcelino Romany; y allí y entonces el Fiscal del Distrito presentó una acusación de violación en contra del acusado, quien fué llamado inmediatamente para el *arraignment*. Leída la acusación por el fiscal, la corte preguntó al acusado qué alegación hacía, a lo que éste respondió que se confesaba culpable del delito que se le imputaba y que solicitaba se dictara sentencia en el mismo acto. La corte le sentenció inmediatamente a sufrir la pena. de veinte años de presidio con trabajos forzados. El peticionario fué recluído

el mismo día, a virtud de dicha sentencia, en la Cárcel de Distrito de San Juan, desde la cual fué traído por su alcaide el día 20 de febrero de 1939 a presencia de esta Corte Suprema, a virtud de mandamiento de hábeas corpus expedido el día 2 del mismo mes.

Oídas las alegaciones de los abogados del peticionario y las del fiscal de esta corte, quien hizo una extensa y razonada exposición de los motivos que le obligaban a allanarse a la petición de hábeas corpus formulada por el peticionario, el tribunal declaró en el acto con lugar el auto de hábeas corpus y decretó inmediatamente la excarcelación del acusado, reservándose el derecho de emitir más tarde una opinión en la que se harían constar los motivos y fundamentos de su sentencia.

El delito de violación que define el artículo 255 del Código Penal puede ser castigado, a discreción del juez sentenciador, con pena que puede llegar a la máxima de reclusión perpetua. (Artículo 258 del mismo Código.) Es, pues, tanto por su naturaleza como por la pena que puede aparejar, un delito de tanta gravedad como el asesinato en su más alto grado. El legislador, sin duda alguna, tuvo en cuenta esas circunstancias al aprobar en 9 de marzo de 1905 la "Ley referente al nombramiento de defensor en causas criminales," (Comp. 6158–6160) cuyo artículo 1°. lee así:

"Artículo 1.—Cuando se traiga al acusado ante el tribunal con el fin de instruirle proceso por un cargo que envuelva pena capital o reclusión perpetua, si resultare que no tiene abogado y que la pobreza del acusado no le permita emplear defensa, el tribunal designará uno o más letrados en ejercicio para que defiendan gratuitamente al reo, concediendo a dichos letrados un período de tiempo razonable para prepararse para el juicio. En todos los demás casos, quedará a la discreción del tribunal, la designación de abogado."

Es un hecho admitido por ambas partes, que en ningún momento durante las pocas horas transcurridas desde el arresto hasta el acto del *arraignment* se le ofreció al acusado una oportunidad de consultar un abogado. Lo ocurrido desde

el *arraignment* hasta que el acusado fué sentenciado aparece de la sentencia, que dice así:

"Hoy día 23 de abril de 1938 y en Corte abierta comparece el acusado Ramón Hernández Laureano a oír la acusación en el presente caso. Luego de leídale por el Fiscal dicha acta de acusación y preguntádole por la Corte qué alegación hacía manifestó que se confesaba culpable del delito que se le imputa solicitando que se dictara sentencia contra en este mismo acto (*sic*). Por tanto, vista la confesión del acusado en Sala de Justicia, la Corte falla declarando a dicho acusado culpable de un delito de Violación y a petición del propio convicto, pronuncia su sentencia, condenándolo a sufrir la pena de veinte años de presidio con trabajos forzados, abonándosele, de acuerdo con la ley, la prisión preventiva que haya sufrido dicho convicto, sin costas por ser insolvente."

Es evidente, pues, que el peticionario no tuvo en ningún momento del proceso la asistencia de abogado; y que la corte sentenciadora, no obstante la gravedad del delito imputado al acusado, la juventud de éste reflejada claramente en su apariencia infantil y la festinación con que se conducía el proceso que había de arrancar al joven acusado de su hogar para sumirlo en un presidio por un término de veinte años, no se cuidó tan siquiera de instruir al reo en cuanto a su derecho constitucional a ser representado por abogado, ni de investigar la edad y antecedentes personales del acusado, ni las circunstancias bajo las cuales se cometiera el alegado delito, elementos todos imprescindiblemente necesarios para poder graduar la pena, actuar con plena conciencia de los hechos, y sentir después de impuesta la pena la satisfacción íntima de haber hecho justicia.

El derecho de todo acusado a estar representado por abogado es uno de los más preciados derechos constitucionales. Está consagrado y reconocido no solamente por las Enmiendas Quinta y Sexta de la Constitución Federal, si que también por la Ley Orgánica de Puerto Rico (art. 2, párr. 2º.), por el artículo 141 del Código de Enjuiciamiento Criminal, ed. 1935, y por la ley de 9 de marzo, supra.

Tanto el peticionario como el fiscal han basado, respectivamente, la solicitud y el consentimiento para la expedición del auto, en la más reciente decisión del Tribunal Supremo Federal, dictada en 23 de mayo, 1938, en el caso de *John A. Johnson, Petitioner,* v. *Fred C. Zerbst, Warden,* (304 U. S. 458). Hemos estudiado detenidamente dicha decisión y la consideramos de tanta importancia que creemos es nuestro deber hacer un resumen de sus hechos y de sus pronunciamientos, que pueda servir de guía a los encargados de administrar justicia rápida, imparcial y desapasionada.

Johnson, el peticionario en dicho caso, fué arrestado por el delito de poseer y usar moneda falsa y no habiendo podido prestar fianza fué recluído el día 21 de noviembre de 1934. El 21 de enero de 1935 el gran jurado formuló una acusación; el día 23 del mismo mes el acusado fué llevado ante la corte e inmediatamente se le leyó la acusación, se le sometió a juicio y fué convicto y sentenciado a cuatro años y medio de presidio. Durante los procedimientos que precedieron a la presentación de la acusación el acusado estuvo representado por un abogado, mas no así durante los procedimientos subsiguientes. En el acto del *arraignment* hizo alegación de no ser culpable, manifestó que no tenía abogado, y contestando a preguntas de la corte dijo que estaba listo para juicio. Entonces fué juzgado, convicto y sentenciado, sin haber sido asistido por abogado. Declarada sin lugar su petición de apelación, por haber sido presentada después de haber expirado el término legal, presentó el peticionario solicitud de hábeas corpus ante la Corte de Distrito Federal, la que se negó a expedir el auto por entender que aun cuando el acusado había sido privado de su derecho constitucional a estar representado por abogado, ésa no era razón suficiente para justificar la anulación del juicio mediante el recurso de hábeas corpus, sino que más bien eran errores o irregularidades cometidos durante el juicio, que solamente podían ser corregidos mediante apelación. Apelado el caso para ante la Corte de Circuito de Apelaciones, ésta confirmó la sentencia. El

Tribunal Supremo, "considerando la importancia de las cuestiones envueltas," expidió auto de *certiorari,* entró de lleno a considerar el caso en sus méritos y revocó la sentencia, devolviendo el caso a la Corte sentenciadora para que ésta procediese de acuerdo con la opinión del Tribunal Supremo.

Refiriéndose a la Enmienda Sexta, que garantiza a todo acusado el derecho a estar representado por abogado en su defensa, dice la opinión del Supremo:

". . . Esta es una de las salvaguardias de la Enmienda Sexta que se considera necesaria para asegurar los derechos fundamentales humanos de vida y libertad . . . La Enmienda Sexta está en pie como una admonición constante de que si las salvaguardias que ella provee se perdiesen, no podría seguirse haciendo justicia. Ella encarna un reconocimiento realístico de la obvia verdad de que el acusado por regla general no posee la habilidad profesional legal para protegerse a sí mismo cuando es llevado ante un tribunal que tiene facultad para privarle de la vida o de su libertad, ante el cual la acusación es presentada por abogados competentes y expertos. Aquello que para el abogado es sencillo, ordenado y necesario, para. el profano puede aparecer como intrincado, complejo y misterioso."

En cuanto a la importancia que tiene para un acusado el consejo y la asistencia de un abogado, dice el Supremo:

"El '....derecho a ser oído sería, en muchos casos, de muy poca utilidad si no incluyese el derecho a ser oído por medio de abogado. Aun el profano inteligente y educado tiene poco y a veces ningún conocimiento de la ciencia del derecho. Si se le acusa de un delito, es generalmente incapaz para determinar por sí mismo si la acusación es suficiente o defectuosa. Él no está familiarizado con las reglas de evidencia. Si se le deja sin la ayuda de un abogado puede ser llevado a juicio sin una acusación suficiente, y convicto mediante evidencia incompetente o irrelevante o por cualquiera otra razón inadmisible. Él carece de habilidad y de conocimientos para la debida preparación de su defensa, aun cuando tuviere una defensa perfecta. Necesita la mano del abogado para guiarle en cada uno de los pasos en los procedimientos que se siguen en su contra.' (*Powell* v. *Alabama,* 287 U. S. 45.) La Enmienda Sexta ha retirado a las Cortes Federales, en todos los procedimientos criminales, la facultad y la autoridad para privar a un acusado de su vida o de su libertad, a menos que él tenga o renuncie a la asistencia de

abogado." (Cf., *Barron* v. *The Mayor, etc.*, 7 Pet. 243, 247; y *Edwards* v. *Elliot*, 21 Wall. 532, 557.)

Al discutir la forma y manera en que un acusado puede renunciar su derecho a estar representado por abogado, el tribunal se expresó así:

". . . Una renuncia (*waiver*) es ordinariamente una dejación o abandono intencional de un conocido derecho o privilegio. La determinación sobre si ha habido una renuncia inteligente del derecho a tener abogado debe depender, en cada caso, de los hechos y circunstancias particulares que en el mismo concurren, incluyendo la historia personal, la experiencia y la conducta del acusado."

Y fijando en frases que sería difícil superar los deberes del juez sentenciador para con el reo que se presenta ante él sin abogado, siguió diciendo el más alto tribunal nacional:

"El derecho constitucional de un acusado a ser representado por abogado invoca, por sí solo, la protección de una corte, ante la cual el acusado, cuya vida o libertad peligran, se presenta sin abogado. Este deber protector impone al juez que preside el juicio la seria y pesada responsabilidad de determinar si el acusado ha hecho una renuncia inteligente y competente. Aun cuando un acusado puede renunciar su derecho a tener abogado, el hecho de si ha habido una renuncia formal debe ser determinado claramente por la corte sentenciadora, y lo correcto sería que esa determinación se hiciera constar en el récord."

Contestando la objeción de que el hábeas corpus no puede ser usado como un recurso para la revisión de errores e irregularidades cometidos durante el juicio, expresóse así la Corte Suprema:

". . . Es cierto que el hábeas corpus no puede ser usado como un medio para la revisión de errores de derecho e irregularidades—que no envuelvan la cuestión de jurisdicción—cometidos durante la tramitación del juicio; y que tampoco puede ser usado como apelación. Estos principios, sin embargo, deben ser interpretados y aplicados con el propósito de conservar—y no destruir—las garantías constitucionales de la vida y de la libertad humanas. El campo de investigación en procedimientos de hábeas corpus ha sido ensanchado—no reducido—desde la adopción de la Enmienda Sexta. En

tal procedimiento, sería claramente erróneo limitar la investigación a los procedimientos y sentencia de la corte sentenciadora, y la corte ante la cual se ha hecho la petición tiene facultad para inquirir acerca de la jurisdicción de la corte inferior, ya sea sobre la materia de la acusación o sobre la persona, aun cuando esa investigación envuelva un examen de hechos fuera de pero no inconsistentes con el récord." (Citas.)

" *      *      *      *      *      *      *

"Toda vez que la Enmienda Sexta concede a un acusado de delito el derecho constitucional a ser asistido por abogado, el cumplimiento de este mandato constitucional es un requisito jurisdiccional previo y esencial para que una Corte Federal tenga facultad para privar a un acusado de su vida o de su libertad. Cuando ese derecho ha sido debidamente renunciado, la asistencia de abogado deja de ser un elemento necesario de la jurisdicción de la corte para proceder hasta la convicción y sentencia. Sin embargo, si el acusado no está representado por abogado y no ha competente e inteligentemente renunciado su derecho constitucional, la Enmienda Sexta se opone como una barrera constitucional en contra de la validez de una convicción y sentencia que le prive de su vida o de su libertad. La jurisdicción de la corte al comenzar el juicio puede perderse 'en el curso de los procedimientos' por haber dejado de completar la corte—según lo requiere la Enmienda Sexta—proveyendo abogado para el acusado que está imposibilitado para obtenerlo, que no ha renunciado inteligentemente esta garantía constitucional y cuya vida o libertad están envueltas. Si este requisito de la Enmienda Sexta no es cumplido, la corte deja de tener jurisdicción para seguir el proceso. La sentencia de convicción dictada por una corte sin jurisdicción es nula, y el que hubiere sido encarcelado en virtud de ella puede obtener su libertad mediante hábeas corpus."

La violación del derecho constitucional del peticionario en el presente caso es tan clara y tan patente como en el de *Johnson* v. *Zerbst*, supra. El presente caso reviste aun mayor gravedad por la inusitada e injustificada festinación habida en la tramitación del proceso. El juez sentenciador no tuvo en cuenta que es a él y a nadie más que a él a quien la ley impone "la seria y pesada responsabilidad" de proteger al acusado huérfano de representación legal y de cerciorarse de si él tiene plena conciencia de sus derechos constitucionales. No pudo haber en el caso de autos una deter-

minación judicial en cuanto a si el acusado hizo una renuncia inteligente y competente de su derecho a estar representado, porque la corte sentenciadora no se cuidó de informarle de su derecho.

Aplicando al caso ante nos la doctrina sentada por el Tribunal Supremo Federal y teniendo en cuenta las disposiciones de la ley de 9 de marzo de 1905, supra, opinamos que la corte inferior cometió un grave y perjudicial error al no informar al acusado de su derecho a estar representado y aconsejado por abogado y asimismo erró al no designarle un abogado defensor, por tratarse de un delito que puede aparejar pena equivalente a reclusión perpetua. La comisión de tales errores privó a la corte inferior de jurisdicción para dictar la sentencia recurrida, la cual debe ser revocada y anulada.

*Debe declararse con lugar el auto de hábeas corpus y decretarse la libertad del peticionario.*