Ex parte LAWRENCE L. BARNETT.

No. A-9698. Sept. 15, 1939.
(94 P. 2d 18.)

310

314

318

W. N. Redwine and Hulsey & Hulsey, all of Mc-Alester, for petitioner.

Mac Q. Williamson, Atty. Gen., Owen J. Watts, Asst. Atty. Gen., and J. A. Minton, Pardon and Parole Atty., of Sayre, for respondent and the State.

DOYLE, P. J. The petitioner, Lawrence L. Barnett, now confined in the state penitentiary, alleges that he is unlawfully imprisoned and detained without authority of law, under a judgment of the district court of Adair county, rendered June 11, 1934, finding him guilty of the offense of attempt to rape, wherein he was sentenced to serve a term of 50 years' imprisonment.

Petitioner seeks his release upon the ground that it conclusively appears from the record that said district court did not have jurisdiction to render the judgment, in that he was denied constitutional rights guaranteed to him by the Constitution and the laws of the state, wherefore petitioner was deprived of his liberty without due process of law.

The prosecution was based upon section 2515, 21 Okla. St. Ann. § 1111, which provides:

"Rape is an act of sexual intercourse accomplished with a female, not the wife of the perpetrator, under either of the following circumstances: 1st. Where the female is under the age of 16 years."

Section 2518, 21 Okla. St. Ann. § 1114, provides:

"Rape committed by a male over eighteen years upon a female under the age of fourteen years, is rape in the first degree."

Section 2519, 21 Okla. St. Ann. § 1115, provides:

"Rape in the first degree is punishable by death or imprisonment in the penitentiary, not less than 15 years."

It appears from the record that on June 11, 1934, a complaint was filed in the county court charging petitioner with rape in the first degree; on the same day an information was filed in the district court of Adair county, charging an offense denominated "Attempt to Rape," and on the same day the judgment and sentence of the court was rendered on his plea of guilty.

The respondent insists that under the statute, section 693, 12 Okla. St. Ann. § 1342, a writ of habeas corpus will not lie "upon any process issued on any final judgment of a court of competent jurisdiction"; that such judgment, valid on its face, is an unanswerable return to a writ of habeas corpus, issued for the relief of a prisoner imprisoned by virtue of such judgment.

The writ of habeas corpus, which has for centuries been esteemed the best and only sufficient defense of personal freedom, has for its object the speedy release by judicial decree of persons illegally restrained of their liberty.

It is not a mere corrective remedy and is not to be employed as a writ of quo warranto, nor as a writ of certiorari, nor permitted to perform the functions of an appeal.

The jurisdiction of the court to render a particular judgment by which a person is imprisoned, is a proper subject of inquiry on habeas corpus.

In the case Ex parte Grant, 32 Okla. Cr. 217, 240 P. 759, 760, it is said:

"Its scope, when directed to an inquiry into the cause of imprisonment in judicial proceedings, extends to questions affecting the jurisdiction of the court and the sufficiency in point of law of the proceedings. Mere errors or irregularities in a judgment or proceeding of a court under and by virtue of which a person is imprisoned, which are not of such a character as to render the proceedings void, cannot be reviewed on an application for a writ of habeas corpus. Where a prisoner in custody under sentence of conviction seeks to be discharged on habeas corpus, the inquiry is limited to the questions whether the court in which the prisoner was convicted had jurisdiction of the person of the defendant and of the crime charged, and did the court have jurisdiction to render the particular judgment."

In Ex parte Owens, 37 Okla. Cr. 118, 258 P. 758, 760, this court held:

"When a person is held in custody under a void order of commitment, or is imprisoned without due process of law under the sentence of any court of the state, it is not only within the authority of this court, but it is its duty upon habeas corpus to inquire into the illegality of the commitment when the matter is properly brought before it by petition, and if it be adjudged that the order of commitment was made without authority of law, the person will be entitled to a discharge from custody in order to preserve the constitutional right of all persons not to be deprived of liberty without due process of law."

It follows that the question to be determined, is, Did the district court of Adair county have jurisdiction to render the judgment upon the petitioner's plea of guilty.

It is contended that petitioner was deprived in the preliminary hearing before the judge of the county court, acting as an examining magistrate, and before the district court that rendered the judgment, of his constitutional and statutory right of the benefit of counsel, and that the record does not show that the petitioner waived this right.

In the Bill of Rights, Okla. St. Ann. Const., are these provisions:

"§ 7. No person shall be deprived of life, liberty, or property, without due process of law."

"§ 17. No person shall be prosecuted for a felony by information without having had a preliminary examination before an examining magistrate, or having waived such preliminary examination."

"§ 20. In all criminal prosecutions the accused * * * shall be informed of the nature and cause of the accusation against him and have a copy thereof, and be confronted with the witnesses against him, and have compulsory process for obtaining witnesses in his behalf. He shall have the right to be heard by himself and counsel; and in capital cases, at least two days before the case is called for trial, he shall be furnished with a list of the witnesses that will be called in chief, to prove the allegations of the indictment or information, together with their postoffice addresses."

In the Code of Criminal Procedure are these provisions:

"When the defendant is brought before a magistrate upon an arrest, either with or without a warrant, on a charge of having committed a public offense, the magistrate must immediately inform him of the charge against him, and of his right to the aid of counsel in every stage of the proceedings, and also of his right to waive an examination, before any further proceedings are had." Sec. 2793, 22 Okla. St. Ann. § 251.

"He must also allow to the defendant a reasonable time to send for counsel, and adjourn the examination for that purpose; and must, upon the request of the defendant, require a peace officer to take a message to such counsel in the county or city as the defendant may name. The officer must, without delay, perform that duty, and shall receive fees therefor as upon a service of a subpoena." Sec. 2794, 22 Okla. St. Ann. § 252.

"If the defendant appear for arraignment, without counsel, he must be informed by the court that it is his right to have counsel before being arraigned, and must be asked if he desire the aid of counsel. If he desires, and is unable to employ counsel, the court must assign counsel to defend him." Sec. 2929, 22 Okla. St. Ann. § 464.

"If, on the arraignment, the defendant require it, he must be allowed until the next day, or such further time may be allowed him as the court may deem reasonable, to answer the indictment or information." Sec. 2935, 22 Okla. St. Ann. § 491.

"After a plea or verdict of guilty, * * * the court must appoint a time for pronouncing judgment." Sec. 3125, 22 Okla. St. Ann. § 961.

"The time appointed must be at least two days after the verdict, if the court intend to remain in session so long; or, if not, at as remote a time as can reasonably be allowed." Sec. 3126, 22 Okla. St. Ann. § 962.

"When the defendant appears for judgment, he must be informed by the court, or by the clerk under its direction, of the nature of the indictment or information, and his plea and the verdict, if any thereon, and must be asked whether he has any legal cause to show why judgment should not be pronounced against him." Sec. 3134, 22 Okla. St. Ann. § 970.

A plain reading of these provisions is conclusive of the questions presented and it is not shown by the record that these requirements of the Constitution and statutes were complied with. It is apparent from the record that petitioner was not sufficiently advised of his rights by the committing magistrate, or by the district judge.

In Goben v. State, 20 Okla. Cr. 220, 201 P. 812, 815, it is said:

"The right of the accused to the assistance of counsel in making his defense has long been regarded in this country as essential to the due administration of justice in criminal cases. Says Mr. Cooley:

" 'With us it is a universal principle of constitutional law that the prisoner shall be allowed a defense by counsel.' Const. Lim. 334."

In Polk v. State, 26 Okla. Cr. 283, 224 P. 194, this court held:

"A plea of guilty should be entirely voluntary, by one competent to know the consequences, and should not be induced by fear, persuasion, promises, or ignorance."

And held:

"A plea of guilty should not be entered until after the defendant has been fully advised by the court of his rights and the consequences of his plea."

In Powell v. Alabama, 287 U. S. 45, 53 S. Ct. 55, 64, 77 L. Ed. 158, 84 A.L.R. 527, headnotes 10 and 11, are as follows:

"In a capital case, where the defendant is unable to employ counsel and is incapable adequately of making his own defense because of ignorance, feeble-mindedness, illiteracy, or the like, it is the duty of the court, whether requested or not, to assign counsel for him as a necessary requisite of due process of law; and that duty is not discharged by an assignment at such a time or under such circumstances as to preclude the giving of effective aid in the preparation and trial of the case."

"A court has power, even in the absence of a statute, to appoint counsel to defend one charged with crime."

Mr. Justice Sutherland delivering the opinion of the court said:

"The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel. Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defense, even though he have a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him. Without it, though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence. If that be true of men of intelligence, how much more true is it of the ignorant and illiterate, or those of feeble intellect. If in any case, civil or criminal, a state or federal court were arbitrarily to refuse to hear a party

by counsel, employed by and appearing for him, it reasonably máy not be doubted that such a refusal would be a denial of a hearing, and, therefore, of due process in the constitutional sense."

In this connection we desire to quote fully from the opinion delivered by Mr. Justice Black for the Supreme Court of the United States, in the case of Johnson v. Zerbst, 304 U. S. 458, 58 S. Ct. 1019, 1023, 82 L. Ed. 1461:

"The purpose of the constitutional guaranty of a right to counsel is to protect an accused from conviction resulting from his own ignorance of his legal and constitutional rights, and the guaranty would be nullified by a determination that an accused's ignorant failure to claim his rights removes the protection of the Constitution. True, habeas corpus cannot be used as a means of reviewing errors of law and irregularities—not involving the question of jurisdiction—occurring during the course of trial; and the 'writ of habeas corpus cannot be used as a writ of error.' These principles, however, must be construed and applied so as to preserve—not destroy—constitutional safeguards of human life and liberty. The scope of inquiry in habeas corpus proceedings has been broadened—not narrowed—since the adoption of the Sixth Amendment, [U.S.C.A. Const.]. In such a proceeding, 'it would be clearly erroneous to confine the inquiry to the proceedings and judgment of the trial court' and the petitioned court has 'power to inquire with regard to the jurisdiction of the inferior court, either in respect to the subject matter or to the person, even if such inquiry (involves) an examination of facts outside of, but not inconsistent with, the record.' Congress has expanded the rights of a petitioner for habeas corpus and the '* * * effect is to substitute for the bare legal review that seems to have been the limit of judicial authority under the common-law practice, and under the Act of 31 Car. II, chap. 2, a more searching investigation, in which the applicant is put upon his oath to set forth the truth of the matter respecting the causes of his detention, and the court, upon determining the actual facts, is to "dispose of the party as law and justice require."

" 'There being no doubt of the authority of the Congress to thus liberalize the common-law procedure on

habeas corpus in order to safeguard the liberty of all persons within the jurisdiction of the United States against infringement through any violation of the Constitution or a law or treaty established thereunder, it results that under the sections cited a prisoner in custody pursuant to the final judgment of a state court of criminal jurisdiction may have a judicial inquiry in a court of the United States into the very truth and substance of the causes of his detention, although it may become necessary to look behind and beyond the record of his conviction to a sufficient extent to test the jurisdiction of the state court to proceed to judgment against him. * * *

" '* * * it is open to the courts of the United States, upon an application for a writ of habeas corpus, to look beyond forms and inquire into the very substance of the matter. * * *'

* * *

"Of the contention that the law provides no effective remedy for such a deprivation of rights affecting life and liberty it may well be said—as in Mooney v. Holohan, 294 U. S. 103, 113, 55 S. Ct. 340, 79 L. Ed. 791, 794, 98 A.L.R. 406—that it 'falls with the premise.' To deprive a citizen of his only effective remedy would not only be contrary to the 'rudimentary demands of justice' but destructive of a constitutional guaranty specifically designed to prevent injustice.

"Since the Sixth Amendment constitutionally entitles one charged with crime to the assistance of counsel, compliance with this constitutional mandate is an essential jurisdictional prerequisite to a federal court's authority to deprive an accused of his life or liberty.

"When this right is properly waived, the assistance of counsel is no longer a necessary element of the court's jurisdiction to proceed to conviction and sentence. If the accused, however, is not represented by counsel and has not competently and intelligently waived his constitutional right, the Sixth Amendment stands as a jurisdictional bar to a valid conviction and sentence depriving him of his life or his liberty. A court's jurisdiction at the beginning of trial may be lost 'in the course of the proceedings' due to failure to complete the court—as the

Sixth Amendment requires—by providing counsel for an accused who is unable to obtain counsel, who has not intelligently waived this constitutional guaranty, and whose life or liberty is at stake. If this requirement of the Sixth Amendment is not complied with, the court no longer has jurisdiction to proceed. The judgment of conviction pronounced by a court without jurisdiction is void, and one imprisoned thereunder may obtain release by habeas corpus. A judge of the United States—to whom a petition for habeas corpus is addressed—should be alert to examine 'the facts for himself when if true as alleged they make the trial absolutely void.' "

In Howington v. State, 30 Okla. Cr. 243, 235 P. 931, this court held:

"A plea of guilty should be entirely voluntary, and should be made by one competent to know the consequences thereof, and should not be accepted until after the defendant has been fully advised by the court of his rights and the consequences of his plea."

In the opinion it is said:

"In cases of this kind, where the defendant is charged with a capital offense, he should have the advantage of every right which the law secures to him upon his trial. A fair and impartial administration of justice is one of the most sacred rights of the citizen, and it is the duty of the courts to see that the constitutional rights of the accused shall not be violated; however guilty he may be, he is entitled to a fair trial according to the due and orderly course of the law. * * *

"The state attempts to safeguard the life and liberty of citizens, and as one of the steps in that direction secures to them, if prosecuted for crime, the constitutional right to be heard by counsel, which includes the right of accused to consult with counsel at every stage of the proceedings, whether imprisoned or admitted to bail. Mullen v. State, 28 Okla. Cr. 218, 230 P. 285.

"The statute provides that where it appears that the defendant has no means and is unable to employ counsel, the court shall in all such cases appoint counsel, to represent him. Section 2929, C. S. 1921 (sec. 2930, St. 1931, 22

Okla. St. Ann. § 1271). There can be little doubt, under the facts in this case, that the defendant was denied the right to be heard by counsel as guaranteed by the letter and the spirit of our state Constitution. There is nothing to show that the defendant waived this right. At the time he was brought before the court and arraigned, he had been given no opportunity to be advised by counsel as to his rights, or as to the consequences of any plea he might enter. The judge of the court asked him if he desired to have a lawyer, but the court did not tell him that he had a right to have an attorney, and the court did not inquire as to what means the defendant possessed by which he could employ a lawyer, and did not inform him that it was the duty of the court to appoint an attorney to appear for him in case he possessed no means to employ one. And the court did not direct any officer of the court to call a lawyer to consult with him, and made no offer to appoint an attorney for that purpose.

"Under the facts stated, the defendant cannot be held to have waived his constitutional right to be heard by counsel. If the defendant had been permitted to consult with counsel learned in the law before he was arraigned, he would have been informed as to his constitutional and statutory rights, and he would have been informed that he had a right to be tried by a jury of 12 men, whose duty it would be to decide the question of his guilt; that in case he was tried by a jury and found guilty of murder, the jury in its discretion would have the right to decide whether the penalty to be imposed should be death or imprisonment for life. He would have been told that he could not be required to give evidence against himself either as tending to show that he was guilty of the offense charged or as tending to show any aggravating circumstances to be considered in fixing his punishment. He would have been informed, also, that in case he pleaded guilty, such plea would be a judicial confession that he was guilty of murder and a waiver of his right to a trial by jury, and that the court would be authorized on the plea to find him guilty of murder without hearing other evidence. Mullen v. State, supra.

"Under the facts in this case, the court had no right to assume that the defendant was fully advised as to his

rights, and as to the consequences of a plea of guilty. The defendant was young, ignorant, and inexperienced. Under such circumstances, the court was required to use caution in proportion to the gravity of the consequences. * * *

"It may be well to say here that it is as much the duty of prosecuting attorneys to see that a person on trial is not deprived of any of his constitutional rights, as it is to prosecute him for the crime with which he is charged. * * *

" 'The law travels with a leaden heel, but strikes with an iron hand,' is a maxim pregnant with obvious meaning. In this instance, it doffed the 'leaden heel,' yet struck with the iron hand."

In Sutton v. State, 35 Okla. Cr. 263, 250 P. 930, 934, it is said:

"It is true that many constitutional guaranties may be waived by an accused person who comes into court represented by counsel and being fully advised of all his rights, and in such cases it might be said that he waives a right for which he does not ask. However, the record in this case shows that appellant did not waive any constitutional or statutory right, except in so far as his plea of guilty waived his right to be tried by a jury. In our opinion the constitutional right to be represented by counsel and the right in capital cases, at least two days before the case is called for trial, to be furnished with a list of the witnesses, together with their post office addresses, are essential to due process of law guaranteed to the citizen by section 7, Bill of Rights. We are inclined to think that a conviction had by a denial of these constitutional rights simply amounts to judicial lynch law."

And see Ex parte Justus, 3 Okla. Cr. 111, 104 P. 933, 25 L. R. A., N. S., 483; Ex parte Rupert, 6 Okla. Cr. 90, 116 P. 350; Ex parte Hollingshead, 24 Okla. Cr. 131, 216 P. 486; Ex parte Lair, 29 Okla. Cr. 282, 233 P. 789; Ex parte Bonitz, 30 Okla. Cr. 45, 234 P. 780; Ex parte Dunn, 33 Okla. Cr. 190, 242 P. 574; Ex parte Hollins, 54 Okla. Cr. 70, 14 P. 2d 243; Tipton v. State, 30 Okla. Cr.

56, 235 P. 259; Lowrance v. State, 33 Okla. Cr. 71, 242 P. 862; Brown v. State, 39 Okla. Cr. 406, 266 P. 476.

We do not deem it necessary to discuss other questions presented by the record, as they have been fully considered in three cases cited. Goben v. State, Polk v. State, and Mullen v. State.

From all the foregoing considerations it is our opinion that petitioner's conviction in violation of rights guaranteed by the Bill of Rights, Const., art. 2, sec. 20, is a nullity.

It follows that petitioner is unlawfully restrained of his liberty and is imprisoned without due process of law. He is therefore by the judgment of this court discharged therefrom.

The clerk of this court will forthwith forward to respondent, Jess F. Dunn, warden of the penitentiary at McAlester, a duly certified copy of this opinion, and upon receipt of the same said warden is directed to discharge the petitioner, Lawrence L. Barnett.

BAREFOOT and DAVENPORT, JJ., concur.

## ELLIS HALL v. STATE.

No. A-9545. Sept. 15, 1939.

(93 P. 2d 1107.)

Steele & Boatman, and Joe S. Eaton, all of Okmulgee, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Jess L. Pullen, Asst. Atty. Gen., for the State.

DAVENPORT, J. The defendant, Ellis Hall, was by information in the district court of Okmulgee county, Okla., charged with the offense of attempting to rape and ravish one Billie Ruth Jernigan, a female of about 14 years of age. He was tried, convicted, and his punishment fixed at seven and one-half years in the state penitentiary.

The defendant filed a motion for a new trial, which motion was by the court considered, overruled, and the defendant has appealed.

The testimony introduced by the state, in substance, is as follows: That the defendant resided in the 900 block of North Collins street in the city of Okmulgee in the summer, fall, and winter of 1937. The members of his family consisted of his wife and his mother. He had resided at the same place since August, 1935. The prosecutrix, Billie Ruth Jernigan, lived with her parents just across the street from the defendant, at 916 North Collins. Billie Ruth Jernigan, the prosecutrix, was at the date of the alleged offense under the age of 14 years. The offense is alleged to have been committed on or about the 20th day of August, 1937. Billie Ruth Jernigan had a sister by the name of Joy Lynn Jernigan, who was 12 years of age at the time of the alleged offense. Joy also lived at 916 North Collins with her parents. Bettie Sue Pierce also resided in the same neighborhood with the defendant and the Jernigan girls. Bettie Sue Pierce lived with her par-

ents next door to the defendant and his wife. Bettie Sue Pierce was 11 years old.

The testimony further shows that all of the girls named herein played together in the neighborhood, and all attended the public schools of Okmulgee; that they often went to the home of the defendant and his wife. The two Jernigan girls often assisted the wife of the defendant in doing her household work; that all of these girls used the typewriter of the defendant, and often played the piano at his home. The defendant was employed as a linotype operator at the Times Building Company at Okmulgee, and worked at nights, sleeping in the forenoon of the daytime in the room directly across the hall from the living room.

The prosecutrix, Billie Ruth Jernigan, in her testimony, in substance, states that on or about the day or date alleged and set forth in the information:

"I was called to the home of the defendant to assist his wife in doing her household work; that about noon on said date the defendant's wife told me to go into the room of the defendant, and call him. I entered the room of the defendant, who was asleep, and woke him up, and told him Mrs. Hall wanted him to get up. The defendant requested me to sit down on his bed. At that time the defendant was in bed, under the cover, and was dressed in his underclothes. The defendant pulled me down on the bed, putting his right arm around my neck. The defendant then removed his right arm, and succeeded in pulling my slacks and underclothes down to my knees. He then fingered me. He had his private parts out. I raised my knees, striking said defendant; and he rolled away from me. I immediately left his room and went home; that time Mrs. Hall was there in the house, and also Mr. Hall. I don't know whether Mrs. Hall, mother of the said defendant, was at home or not. I did not tell Mrs. Hall, his wife, or any one else about my experience with the defendant until on or about the 31st day of December, 1937. I first told Bettie Sue Pierce. I did not go back and make any statement to Mrs. Hall. I didn't tell my mother about what had hap-

pened. I had another experience with him, which was about two weeks after Mrs. Hall had had an operation. I went over to the house; and she tried to get me to go into his bedroom; and I didn't go. I don't know when it was that Mrs. Hall had an operation. It was after the other experience that I have stated, about three or four months. I went to the carnival one night with Mr. and Mrs. Hall; went in their car. As we left the carnival we went out to some lady's house to see about getting some cream. We got out and went in. When we got back to Mr. Hall's place, Mrs. Hall said she would get out and feed the dog, and Mr. Hall and I stayed in the car. Mr. Hall asked me if I would do it then; and I told him, 'No.' He pulled down my pants; and I opened the door, and got out, and went home. He did not try to kiss me, or make love to me in any other way when he had me on the bed that day; just put his arms around me."