Ex parte Pablo Resto Miranda, peticionario.

Núm. 121.—*Sometido:* Noviembre 13, 1939. *Resuelto:* Diciembre 1, 1939.

*Ciro Malatrasi, Jr.,* y *Antonio J. Amadeo,* abogados del peticionario; *R. A. Gómez, Fiscal,* y *Luís Janer, Fiscal Auxiliar,* abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR TRAVIESO emitió la opinión del tribunal.

El peticionario alega en substancia que el 23 de agosto de 1934 el Fiscal del Distrito de San Juan radicó contra él una acusación por el delito de asesinato genérico, calificación que fué rebajada en el acto del *arraignment* a la de asesinato en segundo grado; que en la indicada fecha el peticionario se declaró culpable del delito que se le imputaba, siendo condenado inmediatamente a la pena de 10 años de presidio con trabajos forzados y a tres meses de cárcel por el delito adicional de portar armas; y que desde esa fecha se encuentra recluído en el Presidio Insular. Como fundamento legal para su excarcelación mediante el auto de hábeas corpus que solicita, el peticionario alega:

"6. Que en ningún momento desde su arresto hasta después de su encarcelación el peticionario tuvo la asistencia de un abogado defensor y la corte en ningún momento le ofreció ni le nombró defensor alguno al peticionario, ni le instruyó en cuanto al derecho que tenía a estar representado por un abogado y en caso de no poder pagar los servicios de un abogado, a tener los servicios de un abogado de oficio nombrado por la corte.

"7. Que el peticionario en ninguna forma renunció su derecho a estar representado por un abogado defensor.

"         .        .        .        .        .        .        .        .

"10. Alega vuestro peticionario que la corte actuó sin jurisdicción por las siguientes razones:

"A. Que la referida sentencia condena al peticionario por una infracción al artículo 201 del Código Penal de Puerto Rico, que establece que la violación de este artículo es un delito grave (*felony*).

"B. Que de acuerdo con el artículo 202 del Código Penal de Puerto Rico, el delito de asesinato en segundo grado se castiga con una pena de presidio no menos de 10 años ni más de 30 años.

"C. Que en ningún momento en el transcurso de la tramitación de este caso criminal, desde la fecha del encarcelamiento a virtud de la sentencia, se le dió al acusado la oportunidad de consultar con abogado alguno, privándole por lo tanto, del derecho constitucional de consultarse y estar representado por un abogado.

"D. Que el peticionario ha sido privado de su libertad sin que se haya seguido u observado un debido proceso de ley, ya que el peticionario no tuvo el beneficio de consultar con y ser aconsejado por un abogado.

"E. Que el juez de la Corte de Distrito de San Juan que sentenció al peticïonario no le hizo a éste la advertencia exigida por la ley y la jurisprudencia al efecto de que el peticionario tenía el derecho a la asistencia de un abogado defensor.

"F. Que la Corte de Distrito de San Juan, por los fundamentos arriba expuestos, condenó y sentenció al acusado sin haber tenido jurisdicción sobre esta causa criminal y sobre el peticionario.

"G. Que al declararse culpable el peticionario ignoraba la naturaleza del delito y las consecuencias de su confesión de culpabilidad ya que el Hon. Juez no le hizo advertencia alguna en cuanto a este punto, y ya que el peticionario estaba huérfano de ayuda y consejo de abogado, familiar o amigo alguno.

"H. Que por las razones consignadas anteriormente la detención y encarcelación del peticionario son absolutamente nulas e ineficaces."

Traído el peticionario ante el tribunal en pleno el día 13 de noviembre de 1939, el Jefe de la Penitenciaría Insular presentó el informe escrito requerido por el artículo 476 del Código de Enjuiciamiento Criminal. En lo que es pertinente dicho informe lee así:

"Acusación.—El fiscal formula acusación contra Pablo Resto Miranda, por un delito de asesinato (*felony*) cometido de la manera siguiente: el referido acusado Pablo Resto Miranda, en época anterior a la presentación de esta acusación, o sea allá el día 16 de agosto de 1934, y en San Juan, Puerto Rico, del distrito judicial del mismo nombre, allí y entonces, de una manera ilegal y voluntaria, con malicia premeditada y expresa y firme y deliberado propósito de matar y demostrando tener un corazón pervertido y maligno, dió muerte ilegal, al ser humano Eugenio Cruz Martínez,

al cual le acometió y agredió con una navaja barbera, que es un árma mortífera, infiriéndole varias heridas de carácter grave, y a consecuencia de dichas heridas recibidas falleció el mencionado Eugenio Cruz Martínez, en San Juan, Puerto Rico, el día 16 de agosto de 1934, y que dichas heridas fueron inferidas por el acusado Pablo Resto Miranda, al hoy interfecto Eugenio Cruz Martínez, con la intención de matarlo.

"Este hecho es contrario a la ley, etc. M. Romany, Fiscal. Jurada 23 de agosto de 1934. Certifico: E. López Tizol, Secretario.

"SENTENCIA.—Hoy día 23 de agosto de 1934 y en corte abierta compareció el acusado Pablo Resto Miranda a oír la acusación en el presente caso. Luego de leídale por el Fiscal dicha acta de acusación y preguntádole por la Corte qué alegación hacía, manifestó que se confesaba culpable del delito de asesinato en segundo grado solicitando que se dicte sentencia contra él en este mismo acto. Por tanto, vista la confesión del acusado en sala de justicia, la Corte falla declarando a dicho acusado culpable de un delito de Asesinato en Segundo Grado y a petición del propio convicto, pronuncia su sentencia, condenándolo a sufrir la pena de diez años de presidio con trabajos forzados, abonándosele, de acuerdo con la ley, la prisión preventiva que haya sufrido dicho convicto, sin costas por ser insolvente.

"Dada en Corte abierta, en San Juan, P. R., a 23 de agosto de 1934.—Angel R. de Jesús, Juez de Distrito."

Del Libro de Minutas de la corte sentenciadora no aparece que en momento alguno durante el *arraignment* y sentencia del acusado éste estuviese representado por o asistido de un abogado defensor. El fiscal de esta corte admite, no solamente que el acusado estuvo durante todo el proceso huérfano de representación y asistencia legal, si que también el incumplimiento de lo prescrito por el artículo 141 del Código de Enjuiciamiento Criminal y por la ley de 9 de marzo de 1905, toda vez que en ningún momento se advirtió al acusado de su derecho a ser representado por abogado, ni se le nombró abogado defensor.

En el acto de la vista el peticionario declaró bajo juramento, sin que su declaración fuese impugnada o contradicha por el fiscal, y dijo:

"Sr. Fiscal: Voy a hacer dos o tres preguntas al acusado en relación a esto.

"Fiscal: ¿Qué edad tiene usted?

"Acusado: Como 26 años.

"P.—¿Ahora?

"R.—Sí, señor.

"P.—Dicen los autos en el caso éste que usted compareció en la vista ante la corte y al leérsele la acusación de asesinato en primer grado usted alegó ser inocente; y después informó a la corte que usted se declaraba culpable de asesinato en segundo grado. ¿No es eso? Conteste en alta voz.

"R.—Sí, señor.

"P.—¿Se dió usted entonces cuenta perfecta de la acusación, de lo que se le imputaba?

"R.—Sí, señor.

"P.—¿Y entonces por eso fué que usted informó a la corte que era inocente del delito que se le imputaba y que se declaraba culpable de asesinato en segundo grado? ¿No es eso?

"R.—Sí, señor.

"P.—¿Alguien le explicó, ejercitó alguna influencia, alguna fuerza para que usted hiciera esa declaración, o fué espontánea?

"R.—Sí, señor, se me aconsejó que me declarara culpable.

"P.—Explíquele a los señores magistrados todo lo que haya pasado en relación con esos datos, ¿qué pasó?

"R.—Bueno, se me aconsejó que como yo era un ser insolvente no podía poner un abogado profesional para que pudiera tener un buen resultado, pues esto era mejor que me declarara culpable para que así me pudieran echar el mínimo y podía salir mejor.

"P.—¿Quién le hizo esa advertencia? ¿Quién le dió a usted ese consejo?

"R.—A mí me aconsejó un señor, yo no sé quién es él, yo no sé si el Fiscal, no recuerdo bien.

"P.—¿Usted no tuvo abogado en ningún momento?

"R.—No, señor.

"P.—¿Hasta qué grado llegó usted en la escuela?

"R.—Hasta tercer grado.

"P.—¿Sabe leer y escribir?

"R.—Un poco.

"P.—¿Alguna vez antes de esta acusación, tuvo usted que comparecer ante una corte en algún sentido?

"R.—No, señor, nunca, nunca.

"Sr. Fiscal: Nada más.

"Sr. Presidente: Dígame, ¿a usted lo acusaron de asesinato en primer grado?

"Acusado: Sí, señor.

"P.—¿Y usted se declaró culpable de asesinato en segundo grado?

"R.—Sí, señor.

"P.—¿Qué diferencia hay entre asesinato en primer grado y asesinato en segundo grado?

"R.—Bueno, en que segundo grado pues hay más consideración declarándose uno culpable de segundo grado, hay más consideración.

"P.—¿Consideración de qué?

"R.—Bueno, según me explicaron...

"P.—Según le explicaron, ¿qué clase de consideración? ¿Qué diferencia hay entre una cosa y otra?

"R.—No puedo, no sé contestar.

"P.—¿Usted no sabe?

"Juez Travieso: ¿Dónde estaba usted cuando le dieron esos consejos de que si se declaraba culpable le impondrían a usted el mínimo; quién le dió ese consejo a usted, y dónde?

"R.—En la Corte de Distrito.

"P.—¿En qué parte de la corte, ante el juez o en la Fiscalía?

"R.—En una oficina.

"P.—¿Dónde estaba usted, detenido, o estaba libre bajo fianza?

"R.—A mí me llevaron a una oficina.

"P.—¿Pero usted estaba preso?

"R.—Sí, señor, en sumaria.

"P.—¿No fué el márshal quien le dió a usted ese consejo?

"R.—No estoy seguro si fué el márshal o el fiscal, yo no lo conozco.

"P.—¿Usted conocía al fiscal?

"R.—No, señor.

"P.—¿No lo vió el día que le leyeron la acusación?

"R.—Bueno, lo vi, pero yo no me recuerdo, yo llevo cinco años de preso.

"P.—¿Pero fué la misma persona que le leyó la acusación que le dió ese consejo?

"R.—Sí, señor.

"P.—¿La misma persona? ¿De modo que el único consejero que usted tuvo fué el fiscal?

"R.—Sí, señor."

Podíamos haber resuelto el caso de autos por la autoridad del de *Ex parte Hernández Laureano,* 54 D.P.R. 416, en el cual la violación del derecho del acusado no fué tan grave y flagrante como en el caso del aquí peticionario. Laureano fué arrestado, acusado, convicto y sentenciado a veinte años de presidio, todo en menos de veinticuatro horas, sin que en momento alguno estuviese representado por abogado o se le advirtiese de su derecho a tener asistencia legal. El desamparo del acusado aquí peticionario ha sido aún mayor. Se le obligó a contestar una acusación de asesinato genérico, por la que podía ser condenado a reclusión perpetua, sin asistencia de abogado y sin advertencia alguna en cuanto a su derecho a ser defendido por un letrado; y cosa más grave aún, por ser contraria a la ética profesional, el único consejo que tuvo oportunidad de recibir el prisionero fué el que le ofreciera el fiscal acusador, que era precisamente el único abogado que estaba obligado por razones que nos parecen obvias a abstenerse de aconsejarle. ¿Cómo es posible creer que pudiese aconsejarle sin pasión, sin prejuicio y sin parcialidad aquel que por razón de su ministerio tenía la obligación de acusarle y por el hecho de haberle ya acusado debía sentirse moralmente seguro de su culpabilidad?

En deferencia a los distinguidos comentaristas y críticos de la opinión rendida por este tribunal en *Ex parte Hernández Laureano,* supra, y dispuestos a rectificar el error si alguno hubiésemos cometido, hemos estudiado de nuevo y muy cuidadosamente la única cuestión legal envuelta en el presente caso, la que formularemos así: ¿Tiene derecho un acusado de delito grave a estar asistido y aconsejado por un abogado en el acto de la lectura de la acusación y a que se le advierta de la existencia de ese derecho a su favor, antes de que se le requiera para que conteste o excepcione la acusación?

Es cierto que en el caso de *Johnson* v. *Zerbst,* 304 U. S. 458, 82 L. Ed. 1461, que sirvió de base a nuestra decisión

en *Ex parte Laureano,* supra, se trataba de un acusado que después de haber hecho alegación de inocencia fué sometido a juicio sin la asistencia de abogado y sin que se le hiciera advertencia alguna en cuanto a su derecho constitucional de tener para su defensa la ayuda de abogado; y que en el caso de autos el acusado, quien ni antes ni en el momento de serle leída la acusación tuvo la ayuda de un abogado ni se le advirtió de su derecho a asistencia legal, hizo alegación de culpabilidad, haciendo innecesaria la celebración de un juicio. Esta diferencia entre uno y otro caso carece a nuestro juicio de importancia, pues estamos convencidos de que la consulta y consejo de un abogado son tan necesarios para un acusado antes y en el acto de serle leída la acusación, como lo son durante la celebración de un juicio. La exposición de un caso hipotético hará más comprensible nuestra posición. Supongamos que A da muerte a B bajo circunstancias que a lo sumo justificarían la calificación del hecho como un homicidio. El fiscal acusa a A de asesinato en primer grado. A, hombre ignorante de los tecnicismos legales y de las distintas gradaciones o modalidades del homicidio y de las circunstancias que justifican o excusan un acto homicida, incapaz para juzgar por sí mismo sobre la suficiencia de la acusación o la validez de su defensa, preso y alejado de sus familiares y amigos, huérfano del consejo de un defensor, acaba por aceptar el del fiscal y se declara culpable de asesinato en segundo grado, delito que en realidad no ha cometido y que ha confesado en medio de su indefensión y desamparo como único medio de evitar una condena a reclusión perpetua. La intervención y asistencia de un abogado seguramente hubiese impedido la consumación de ese error judicial.

Se dirá, tomando como base la decisión de la Corte Federal para el Distrito de Georgia, en el caso de *Erwin* v. *Sandford, Warden,* 27 Fed. Supp. 892, que la declaración de culpabilidad hecha por el acusado constituye por sí sola una renuncia *inteligente y competente* del derecho a estar

asistido por un abogado, y que, por lo tanto, al condenarle sin nombrarle abogado la corte no le negó su derecho constitucional de defensa profesional. Parécenos muy fácil establecer una distinción entre los hechos del citado caso y los del de autos. El acusado Erwin alegó que él había sido obligado a declararse culpable. Su petición de hábeas corpus fué denegada con estas palabras:

"La evidencia en este caso demuestra que el peticionario *libre y voluntariamente* declaró ser culpable del delito que se le imputaba en la acusación.

. . . . . . . . .

"Cuando una persona, sin abogado, admite su culpabilidad de un crimen y no pide ni desea la celebración de un juicio, sino que más bien desea declararse culpable y someterse a la clemencia de la corte, *y libre y voluntariamente hace tal declaración, su conducta es una renuncia competente e inteligente* de su derecho constitucional a la asistencia de abogado." (Bastardillas nuestras.)

No basta, pues, para sostener la validez de la condena de un acusado, que no estuvo representado por abogado en el acto del *arraignment* y a quien no se le advirtió de su derecho a tener asistencia legal, que se diga que ese acusado al declararse culpable, renunció por ese solo hecho su derecho a ser defendido por un abogado. Es deber de la corte ir más allá de esa simple declaración de culpabilidad e indagar si la misma fué hecha *libre y voluntariamente*. Así lo hizo la Corte Federal en *Erwin* v. *Sandford,* supra, negándose a expedir el auto por la siguiente razón expuesta en su opinión por el juez de distrito:

"De la evidencia en este caso encuentro que la alegación no fué hecha mediante coacción y sí que fué hecha libre y voluntariamente."

La regla sentada por la Corte Suprema Federal en *Johnson* v. *Zerbst,* supra, es más estricta aún pues requiere, para que la renuncia del derecho a ser defendido por abogado sea válida, que el acusado conozca o se le informe de ese derecho y que lo renuncie no sólo libre y voluntariamente si que también inteligente y competentemente. Y es deber

del juez para determinar si ha habido una renuncia inteligente y competente de dicho derecho, investigar los hechos y circunstancias particulares del caso, incluyendo la historia personal, la experiencia y la conducta del acusado, haciendo constar todo en el récord del caso. Todo lo expuesto está en consonancia con la política humana del derecho penal moderno que tiende a erradicar las prácticas de aquellos tiempos en que al acusado no se le permitía declarar en su propia defensa y no se le designaba defensor, haciendo posible la convicción de un hombre que se encontrase sin dinero, sin abogado, sin medios hábiles para citar sus testigos y sin que se le permitiese declarar en su defensa. Véanse: *Patton* v. *United States,* 281 U. S. 276, 74 L. Ed. 854; *Hack* v. *State,* 141 Wis. 346, 45 L.R.A. (N. S.) 664.

En *Powell* v. *Alabama,* 287 U. S. 45, 77 L. Ed. 158, la Corte Suprema sostuvo que el derecho de un acusado a estar representado por abogado queda en substancia denegado cuando al serle leída la acusación no se le pregunta si tiene abogado, si puede conseguirlo o si desea que la corte se lo designe.

El Fiscal de esta Corte Suprema ha sometido a nuestra consideración una reciente decisión de la Corte Criminal de Apelaciones de Oklahoma, en el caso *Ex parte Barnett,* 94 P. (2d) 18, dictada en septiembre 15, 1939. Los hechos de dicho caso son muy parecidos a los del caso de autos. El acusado Barnett, a quien se imputaba el monstruoso delito de haber violado a su propia hija de diez años de edad, basó su petición de hábeas corpus en fundamentos legales idénticos a los aducidos por el peticionario en el presente recurso, alegando en substancia: que inmediatamente después de ser arrestado fué llevado a presencia del juez del condado y que en la investigación preliminar practicada por dicho juez el acusado no estuvo representado por abogado ni se le dió la oportunidad de conseguirlo; que de allí fué llevado ante el juez de distrito, quien le sentenció a cincuenta años de presidio, sin informarle en cuanto a su derecho cons-

titucional a tener un abogado defensor y sin preguntarle si deseaba que se le nombrase abogado; que cuando el *sheriff* lo arrestó lo llevó a la cárcel y allí le dijo que como él no tenía dinero para emplear un abogado, si no se declaraba culpable probablemente tendría que quedarse en la cárcel por lo menos un año hasta que le celebraran el juicio, mientras que si se declaraba culpable podría empezar en seguida a cumplir su sentencia; y que fué siguiendo esos consejos que él decidió declararse culpable. Con el fin de probar que el acusado había renunciado "inteligente y competentemente" su derecho constitucional, el Ministerio Público presentó *affidavits* del juez sentenciador, del fiscal y del *sheriff* del Condado, en los que se hacía constar que antes de que el acusado hiciera su declaración de culpabilidad el juez le advirtió de su derecho a estar representado por un abogado. No obstante lo expuesto en dichas declaraciones, la corte expidió el auto y decretó la libertad del acusado, basándose en la opinión dictada por la misma corte en *Howington* v. *State,* 30 Okl. Cr. 243, 235 P. 931, en la que se resolvió:

"Una declaración de culpabilidad debe ser enteramente voluntaria y hecha por uno que sea competente para saber las consecuencias de la misma, y no debería ser aceptada hasta que el acusado haya sido plenamente advertido por la corte en cuanto a sus derechos y a las consecuencias de su alegación.

. . . . . . . . .

"El estado trata de proteger la vida y la libertad de sus ciudadanos, y como uno de los pasos en esa dirección les garantiza, si son procesados por un delito, el derecho constitucional de ser oído por representación de abogado, lo cual incluye el derecho del acusado a consultar con abogado en cada uno de los trámites del proceso, ya se encuentre preso o admitido a fianza. (Citas.)

"El estatuto prescribe que cuando aparece que el acusado carece de recursos y no puede emplear abogado, la corte deberá en todos los casos designar un abogado para que lo represente. (Citas.) No cabe duda, de acuerdo con los hechos de este caso, que al acusado se le negó el derecho a ser oído por medio de abogado, tal cual lo garantiza la letra y el espíritu de nuestra Constitución estatal.

No hay nada que demuestre que el acusado haya renunciado ese derecho. En el momento en que fué traído ante la corte y leídale la acusación, no se le había dado una oportunidad de ser aconsejado por un abogado en cuanto a sus derechos o en cuanto a las consecuencias de cualesquiera alegaciones que él pudiera hacer. El juez le preguntó si deseaba tener un abogado, pero la corte no le dijo que él tenía derecho a tenerlo, ni investigó en cuanto a los recursos que el acusado poseía y con los cuales pudiera emplear un abogado, y no le informó que era deber de la corte nombrar un abogado que lo representase, en caso de que él no pudiese pagar uno. Y la corte no ordenó a ningún funcionario de la misma que llamase un abogado para consultar con el acusado, y no ofreció nombrarle abogado para ese fin.

"De acuerdo con los hechos expuestos, no puede sostenerse que el acusado haya renunciado su derecho constitucional de ser representado por abogado. Si la corte hubiese permitido al acusado consultar con un abogado conocedor de la ley antes de que se le leyera la acusación, él hubiese sido informado en cuanto a sus derechos constitucionales y estatutarios, y se hubiese informado de que tenía derecho a ser juzgado por un jurado de 12 hombres, el deber de los cuales era decidir en cuanto a su culpabilidad... Se le hubiera dicho que a él no podía obligársele a declarar en contra de sí mismo, ni para probar que él era culpable del delito que se le imputaba ni tampoco para establecer ninguna circunstancia agravante que debiera tomarse en consideración para fijar la pena. Se le hubiese informado además que en el caso de que se declarase culpable, esa declaración equivaldría a una confesión judicial de que era culpable de asesinato y a una renuncia de su derecho a ser juzgado por un jurado.

"De acuerdo con los hechos en este caso, la corte no tenía derecho a asumir que el acusado había sido plenamente advertido de sus derechos y de las consecuencias de una alegación de culpabilidad. El acusado era joven, ignorante e inexperto. Bajo tales circunstancias la corte estaba obligada a proceder con cautela en proporción a la gravedad de las consecuencias....

"Podemos muy bien decir aquí que es tanto un deber de los fiscales cuidarse de que una persona bajo proceso no sea privada de ninguno de sus derechos constitucionales, como lo es el de seguirle el proceso por el delito que se le imputa."

Por lo expuesto se ve claramente que la corte de Oklahoma ha dado a la decisión en *Johnson* v. *Zerbst* la misma

interpretación y alcance que le diéramos en *Ex parte Hernández Laureano.*

Los comentaristas de nuestra decisión en el último caso citado, se han mostrado alarmados creyendo que las puertas de la Penitenciaría se abrirían para poner en libertad a miles de criminales. No existe en verdad motivo justificado de alarma. De los 44 confinados puestos en libertad desde que dictamos la decisión en *Ex parte Hernández Laureano,* la mayor parte había cumplido ya el término necesario para poder solicitar su libertad bajo palabra y hubiesen podido obtenerla por orden del Ejecutivo, sin necesidad de acudir a este tribunal. Pero, aun cuando fuera mucho mayor el número de los liberados, sostendríamos que es preferible abrir las puertas del penal a todos los allí confinados que hubieren sido ilegalmente juzgados y sentenciados, aun cuando fueren culpables, a mantenerlas cerradas para uno solo que siendo inocente haya sido sentenciado en violación de sus derechos constitucionales y sin el debido proceso de ley.

No apareciendo del récord de este caso que el acusado aquí peticionario renunciara libre y voluntariamente su derecho constitucional a ser representado y aconsejado por un abogado en todos los pasos del proceso criminal seguido en su contra, ni que se le advirtiera en manera alguna de la existencia de tal derecho o se le nombrara u ofreciera nombrarle abogado, somos de opinión que no puede sostenerse que el acusado haya renunciado sus derechos constitucionales inteligente y competentemente.

Tratándose de una petición de hábeas corpus radicada originalmente en esta Corte Suprema y no de un caso procedente de una corte de distrito y elevado a esta corte mediante apelación o auto de *certiorari,* lo único que procede es declarar con lugar la petición o denegarla. *Y estimando que existen sobradas razones para declararla con lugar, expedir el auto y decretar la excarcelación del peticionario, así lo resolvemos.*