**Adell DAVIS alias Freddie Davis,
Plaintiff in Error,**

v.

**STATE of Oklahoma, Defendant in Error.**

No. A–13114.

Court of Criminal Appeals of Oklahoma.

Jan. 17, 1962.

Chris Rhodes, Tulsa, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., for defendant in error.

BUSSEY, Judge.

Briefly the facts contained in the record reveal that Plaintiff in Error, Adell "alias"

Freddie Davis, hereinafter referred to as defendant, was charged with the offense of Robbery with Firearms after former conviction. He was represented by private counsel through the preliminary hearing and his arraignment in District Court. On October 27, 1960, defendant's attorney appeared before the court and requested to withdraw from the case. This request was allowed and the court then appointed Ollie Gresham, one of the public defenders, to represent defendant. The case was then set for trial on November 9, 1960. On that date the public defender, Ollie Gresham, appeared for defendant and moved that defendant be sent to a mental hospital for observation relative to possible psychosis and inability to stand trial. The motion was sustained and under court order the defendant was subsequently removed to the hospital at Taft, Oklahoma, where he remained under observation for the entire 90 day period. Defendant was diagnosed as Sociopathic Personality Disturbance, Anti Social Reaction. On February 23, 1961, his release having previously been ordered, the defendant was returned from Taft to the Tulsa County jail. Eleven days later, March 6, defendant's case was called for trial. The public defender, Ollie Gresham, had since vacated the office and made no appearance. After the state had announced ready the court inquired of defendant if he was ready. He announced "Yes". The court then inquired if he was represented by counsel. Defendant replied "I don't need an attorney, Jesus Christ is my lawyer." Whereupon, the court appointed Mr. Chris Rhodes, the public defender, to represent the defendant. Mr. Rhodes advised the court that he had never heard of the case before, and noting it to be a capital offense would like to have the case continued to a later date to give him time to prepare. The court advised the public defender that defendant had had several months to obtain counsel and that the court would take a recess to give the public defender time to confer with defendant. The defendant and Mr. Rhodes retired to the ante room and approximately five minutes

later the public defender announced to the court in chambers that the defendant refused to co-operate with him, and that he did not desire the public defender to represent him and refused to discuss his defense with him. Whereupon, the court directed Mr. Rhodes to aid and assist the defendant in whatever capacity the defendant would permit Mr. Rhodes to act. The court advised the defendant that he would allow the defendant to represent himself and that the court would appoint Mr. Rhodes to sit at the counsel table and advise and assist the defendant in whatever capacity the defendant would permit the public defender to act. The court so advised the jury and the case proceeded to trial. No attempt was made by defendant to examine the jury on voir dire and no challenges were raised by him. Defendant made no attempt to cross-examine any of the prosecuting witnesses nor did he make any opening statement in his behalf. Defendant took the stand at the direction of the public defender and the call of the court.

Our Constitution provides in Article II, section 20 that the accused, "shall have the right to be heard by himself and counsel; and in capital cases, at least two days before the case is called for trial, he shall be furnished with a list of the witnesses that will be called in chief, to prove the allegations of the indictment or information, together with their postoffice addresses."

While the accused may waive the right to counsel and defend himself (see Polk v. State, 26 Okl.Cr. 283, 224 P. 194; Howington v. State, 30 Okl.Cr. 243, 235 P. 931; Ex parte Barnett, 67 Okl.Cr. 300, 94 P.2d 18), no such waiver exists in the case at bar. Waiver is defined as the voluntary relinquishment of a known right. Thus, the accused not only must voluntarily manifest his intention to waive his right or rights but it must clearly appear that he is completely aware of the nature of the charge against him and is competent to know the consequences arising from his waiver of these rights. In this connection this court will indulge every reasonable presumption against a waiver of fundamental constitu-

tional rights, and will not presume acquiescence in their loss.

■ Where the defendant is to be placed on trial for his life, he should have the advantage of every right which the law secures to him upon his trial. A fair and impartial administration of the laws is one of the most sacred rights of the citizen, and it is the duty of trial courts in the administration of the law to see that the accused, however guilty he may be, shall have a fair trial according to the due and orderly course of the law, and this duty is emphasized in a capital case.

In Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 65, 77 L.Ed. 158, the United States Supreme Court said:

"In a capital case, where the defendant is unable to employ counsel and is incapable adequately of making his own defense because of ignorance, feeble-mindedness, illiteracy, or the like, it is the duty of the court, whether requested or not, to assign counsel for him as a necessary requisite of due process of law; and that duty is not discharged by an assignment at such a time or under such circumstances as to preclude the giving of effective aid in the preparation and trial of the case."

See also Goben v. State, 20 Okl.Cr. 220, 201 P. 812; Sutton v. State, 35 Okl.Cr. 263, 250 P. 930; and Dumas v. State, 54 Okl.Cr. 207, 16 P.2d 886.

In Dumas v. State, supra, this court held that the court made no unqualified order appointing counsel for the defendant, and "that, when defendant is without counsel, the court should appoint counsel for him and adjourn the hearing for a sufficient time to permit counsel to consult his client and prepare."

■ We have examined all the cases accessible bearing upon this question and the rule appears to be well settled that, under the constitutional guaranty that the accused shall have the right to the assistance of counsel, counsel appointed to defend the accused in a capital case must be given a reasonable time to prepare for trial, to investigate the facts, and examine the law applicable to the case.

■ Moreover had the court granted counsel for defense sufficient time to adequately prepare for trial it is apparent that he would have been able to discover the mental condition of the accused as hereafter related and could have called this to the attention of the court and requested a jury trial on the issue of present sanity as provided in 22 O.S. § 1162.

The following are excerpts from the record:

(Direct examination of the defendant)

"Q Do you know of any witnesses who could testify in your behalf?

"A In my behalf, no, unless—every child of God is a witness in my behalf.

\*    \*    \*    \*    \*    \*

"Q Have you been in the penitentiary at McAlester, Oklahoma, the Oklahoma State Penitentiary?

"A Well, I am Jesus Christ the Lord, as a battleship to the wicked. Look thee on me, for I am like the rising sun that covers the earth.

\*    \*    \*    \*    \*    \*

"Q I asked you if you were the Adell Davis who was convicted of carrying a concealed weapon in 1941, November the 17th, 1941, at the Police Station here in the City of Tulsa, Municipal Court.

"A Well, I'm not Adell Davis, I'm Jesus Christ. I don't know what he did.

\*    \*    \*    \*    \*    \*

"Q Sometimes, do you live in Oklahoma City?

"A I live anywhere that the son of God can live.

\*    \*    \*    \*    \*    \*

(Direct Examination of Novis Smith (jailer) called as a witness on behalf of the defendant, in surrebuttal)

"Q Would you tell the Court and the jury generally what those actions have been (defendant's) and whether they appear to you to be normal or not?

"A   Well, I'd say that they didn't as far as I'm concerned, because he sends out notes about every time we go back there he's Jesus Christ and he's this and he's that, we're in for Hell, or something like that, and you talk to him or tell him to do something, he'll just walk off and never look at you, or maybe start to turn around to see if you are still watching him, why, he'll just keep a going, won't pay no attention to us at all.   *   *   *"

Nothing said in this opinion should be construed as in any way reflecting upon the defendant's guilt or innocence.   That is a question for the jury, and is one which we have not considered.   Upon the record before us, and for the reasons before stated, we are clearly of the opinion that the defendant did not have that fair and impartial trial to which he was entitled under the law.

The judgment of the trial court is therefore reversed, and the cause remanded for a new trial

NIX, P. J., and BRETT, J., concur.