**Daynne Dunlap KLINEKOLE,**
**Plaintiff in Error,**
**v.**
**The STATE of Oklahoma, Defend-**
**ant in Error.**

**No. A–14907.**

Court of Criminal Appeals of Oklahoma.

April 9, 1969.

Rehearing Denied July 15, 1969.

Valdhe F. Pitman, Oklahoma City, for plaintiff in error.

G. T. Blankenship, Atty. Gen., Dale F. Crowder, Asst. Atty. Gen., Grayson P. Van Horn, Legal Intern, for defendant in error.

## MEMORANDUM OPINION

BUSSEY, Judge.

Daynne Dunlap Klinekole, hereinafter referred to as defendant, was charged, tried, and convicted in the District Court of Harmon County with the crime of burglary in the Second Degree and his punishment fixed at two years imprisonment in the state penitentiary. From said judgment and sentence, he appeals.

During the trial of this cause Ed Sargo testified that at 11:00 p. m. on the evening of July 1, 1967, he saw the defendant seated in Ercie's Cafe in Vinson, Oklahoma with Jerry Johnson, David Miltho, and Wilfred Downs. This witness did not see the defendant or the others leave, but testified that when he left the restaurant around 12:30 a. m., that they were not on the premises.

Ercie Francis, owner of Ercie's Cafe, testified that on the evening of July 1, 1967, at approximately 11:00 p. m., she saw defendant and others seated in a booth of the cafe. She further stated that she was very busy and did not see them leave; however, they were gone when she left her place of business at approximately 2:00 o'clock in the morning.

Monte Francis, grandson of Ercie Francis, testified that he brought his grandmother to work on July 1st arriving about 9:00 a. m. He stated that he stayed there until approximately 2:00 the next morning. He did see the defendant in the cafe around 11:30 p.m., with Jerry Johnson, a boy named David, and Wilfred Downs. This witness stated that he went out to his car to listen to the radio around 11:30 p. m. and he saw the defendant leave the cafe at approximately 12:30 or 1:00 with Wilfred Downs; that they went to the back of Clara Gray's grocery store where they were obscured from vision by an air conditioner. They were observed a few minutes later leaving the vicinity of the back door carrying boxes. They ran south to a barbed wire fence, proceeded along the fence until they were obscured by a Tabernacle. They emerged from the Tabernacle shadow without the boxes and returned to Ercie's Cafe where they rejoined Johnson and others. Shortly before 2:00 a. m., this witness telephoned Clara Gray, the owner of the grocery and met her at her house where they proceeded to the grocery store. This Witness accompanied her to the back door of the grocery store where they discovered that a pane from the door had been broken and the door was slightly ajar. They went inside and examined the premises.

Clara Gray testified that she was the owner of the grocery store; that she had secured the store before she left her place of business at approximately 8:00 P.M. July 1, 1967. She testified that she received a call from Monte Francis; that she met him at the back door of her home and they went to the grocery store where they found the glass in the back door broken and the door was standing ajar. In checking the premises she discovered 45 or 50 cartons of cigarettes were missing, together with a green waste basket. She reported the incident to Sheriff Cunningham.

Bill Lambert, Highway Patrolman, testified that he and Sheriff Cunningham and Leon Leslie left Hollis, Oklahoma, for Vinson. As they crossed the Salt Fork River Bridge, he observed a vehicle driving west on a county road intersecting Highway 30. He attempted to stop this car and turned on his red light and white spot light. He lost sight of the vehicle at one point, but accelerated his speed and overtook the vehicle approximately one-half to three-quarters of a mile north of the county road. As he turned the corner in pursuit, he observed the right door on the passenger side being opened and then closed and observed a pasteboard box lying beside the highway. He continued to pursue the vehicle and it stopped. He told the driver to step out, searched the vehicle and

found several cartons of cigarettes. He returned to the place where he had seen the cardboard box and discovered several more cartons of cigarettes. He testified that there was only one person in the car —Jerry Johnson.

Leon Leslie testified that he was with Trooper Bill Lambert on the night in question and testified to essentially the same things except this witness testified that when he first saw the vehicle there were at least two persons in the front seat and possibly two in the back seat. This witness could not positively state whether there was anyone in the back seat. Johnson's automobile disappeared from view over the hill and when the automobile was stopped, he was the sole occupant of the car.

W. A. Cunningham, Sheriff of Harmon County, testified that he saw the driver plainly and saw the shadow of three people who ducked down just as they met the car, as it went around them. He identified the waste basket and cigarettes found when the car was stopped and testified that they had been in his possession since that time.

Bennie J. DeFore testified that he lived approximately 9 miles north and 3 miles west of Hollis. On Sunday, July 2, 1967, at approximately 5:00 a. m., there was a knock at the door of his home. He testified that three boys were at the door who told him their car had broken down and wanted him to carry them home. He dressed, got his pickup truck and took them to Wellington, Texas. He testified that defendant and David Miltho had worked for him in the past, but he did not identify any of the three boys whom he took to Wellington; however, he did state that although he was unable to see their features, he thought he recognized the voices of the defendant and Miltho who had previously worked for him in the 1950's.

Each of the assignments of error presented on appeal will be dealt with in this opinion, but not necessarily in the order in which they arose.

As his third assignment of error, the defendant contends that the evidence wholly fails to establish that there was a breaking and entering and that absent such proof, the conviction cannot be sustained.

■ We are of the opinion that this assignment of error is without merit for as heretofore set forth in the summary of the testimony of Clara Gray, owner and operator of the grocery store, she had locked the premises securely at the close of work and upon returning to the store, she discovered that a pane of glass had been knocked out of the back door, the door had been opened and left ajar, and cigarettes, tobacco and a green waste paper basket had been removed from the premises. Such testimony amply established the unlawful breaking and entering.

■ As his fourth assignment of error, defendant contends that the circumstantial evidence is insufficient to support the verdict of the jury. From our view of the evidence, we are of the opinion that the circumstances presented are consistent with each other and inconsistent with any other reasonable hypothesis but that the defendant was guilty as charged. Such evidence is sufficient to support the verdict of the jury, for we have repeatedly held that where circumstantial evidence is relied upon for conviction, the circumstances proved must not only be consistent with each other, but inconsistent with any other reasonable hypothesis other than his guilt.

■ As defendant's second assignment of error he argues that the court committed reversible error in admitting the testimony of Bill Lambert, Leon Leslie and W. A. Cunningham. We are of the opinion that this assignment of error also is without merit, for the evidence establishes that prior to and after the defendant and Wilfred Downs were observed going to the back door of the burglarized premises and carrying boxes therefrom, he was in the company of Jerry Johnson, David Miltho and Wilfred Downs, and the fact that Johnson had some of the stolen property in

his possession when he was apprehended a relatively short time after the commission of the crime, is sufficient evidence from which to infer that a conspiracy existed between the defendant, Johnson and others; and that Johnson, while not a direct participant in the burglary, was an accessory after the fact and therefore the circumstances surrounding his apprehension a short time after the crime, in possession of the stolen property, were relevant to the issues of the case and were properly a matter for the consideration of the jury in connection with the testimony of Monte Francis and the other State witnesses.

This leads us to a consideration of the defendant's first assignment of error that the trial court erred in refusing to grant a mistrial based upon the prejudicial and improper remarks of the Assistant District Attorney. The instances of which the defendant now complains, appear in the record as follows:

"This really, in my opinion, is more than sufficient evidence to lock this case up; however—" CM 153.

"Here is a boy who put them right at the back door, it wasn't the east door that was broken open, it wasn't the north door, it was the back door, the very door that he put them at, both of them. The air conditioner is all that kept him from being an eyeball witness, that is all, or he would have seen them do what they did and break into that store." CM 177.

"Now, what were they hiding in the shadows? And they passed within 25 or 30 feet of this boy going back into the cafe to get the other two boys to take off in the car, and that is exactly what they did." CM 178.

From our examination of the record, we are of the opinion that the assignments now complained of were proper inferences and deductions to be drawn from the evidence and were based upon the evidence and as such were not an expression of personal opinion. In the case of Kennamer v. State, 59 Okl.Cr. 146, 57 P.2d 646, and cited with approval in Wing v.

State, Okl.Cr., 280 P.2d 740, this Court stated:

"The right of argument contemplates a liberal freedom of speech, and the range of discussion, illustration, and argumentation is wide. Counsel for both the state and the defendant have a right to discuss fully from their standpoint the evidence and the inferences and deductions arising from it. It is only when argument by counsel for the state is grossly improper and unwarranted upon some point which may have affected defendant's rights that a reversal can be based on improper argument."

In conclusion, we observe that the evidence amply supports the verdict of the jury, the record is free of any error which would justify modification or reversal, and in accordance with authorities above set forth, we are of the opinion that the judgment and sentence appealed from should be, and the same is hereby,

Affirmed.

BRETT, P. J., concurs.