Danny PARKER, Appellant,

v.

The STATE of Oklahoma, Appellee.

Nos. F–76–453, F–76–454.

Court of Criminal Appeals of Oklahoma.

Nov. 22, 1976.

Charles D. Neal, Jr., Steidley & Neal, McAlester, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., Toby Mash, Legal Intern, for appellee.

## OPINION

BLISS, Judge.

Appellant, Danny Parker, hereinafter referred to as defendant, and his co-defend-

ant, Lonnie C. Johnson, were charged, tried and convicted in the District Court, Pittsburg County, Cases Nos. F–75–176 and F–75–178, for the offenses of Kidnapping, After Former Conviction of a Felony, in violation of 21 O.S.1971, § 741. In Case No. F–75–176, the kidnapping of Kim Thomas, the jury returned a verdict fixing the defendant's punishment at twenty-five (25) years' imprisonment. In Case No. F–75–178, the kidnapping of Paula Workman, the jury returned a verdict fixing the defendant's punishment at ninety-nine (99) years' imprisonment. Both sentences were in accordance with the verdicts of the juries. From each of these judgments and sentences the defendant has filed an appeal with this Court. Since the assignments of error raised in these appeals overlap, we have consolidated them for consideration.

The testimony presented at trial in connection with the two cases is summarized in the decision handed down today in the appeals of co-defendant Johnson, *Johnson v. State*, Okl.Cr., 556 P.2d 1285 (F–76–449 and F–76–450, 1976).

The first assignment of error is that the trial court erred in determining that the defendant voluntarily, knowingly and intelligently waived his right to counsel when he had the court release his court appointed attorney. The defendant, it is argued, repeatedly and plainly stated he did not want to represent himself but only to get a new court appointed attorney. Since some of the issues raised by the defendant in this appeal are more complicated than those raised by co-defendant Johnson, we take this opportunity to elaborate upon our holdings in *Johnson v. State*, supra.

■ In *United States v. Stephens*, 315 F.Supp. 1008 (W.D.Okl.1970), the defendants sent the trial judge a letter requesting dismissal of their court appointed counsel, alleging he was not "interested" in their

case or "prosecuting (sic) their defense with due diligence." In refusing to dismiss counsel, the federal court found that the defendants had failed to show "good cause" in their letter and that there was "nothing in the files and records of the case" to show that counsel was ineffective. The reasoning and procedure in the *Stephens* case seem sound to this Court. We would apply them completely in this case, except that *Stephens* is contrary to the subsequent landmark decision of the United States Supreme Court in *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). *Faretta* established that a defendant has an independent fundamental right guaranteed by the Sixth Amendment to the United States Constitution, applicable to the States through the Fourteenth Amendment, to represent himself at all stages of criminal proceedings if he elects to do so.[1] A trial court *cannot* force a defendant to accept counsel or refuse to dismiss a court appointed counsel if the defendant elects to represent himself.

■ Prior to *Faretta*, this Court held that an accused *may* waive the right to counsel and defend himself, but this was a discretionary matter for the trial court to decide. *Davis v. State*, Okl.Cr., 368 P.2d 519 (1962). Accord, *Ex parte Barnett*, 67 Okl.Cr. 300, 94 P.2d 18 (1939); *Howington v. State*, 30 Okl.Cr. 243, 235 P. 931 (1925); *Polk v. State*, 26 Okl.Cr. 283, 224 P. 194 (1924). The defendant had no *right* to represent himself, but merely the *opportunity* if the trial court found it feasible and the defendant made a knowing, voluntary and intelligent waiver of his right to counsel. This Court indulged every reasoable presumption against a waiver of the fundamental constitutionally guaranteed right to counsel. See, e. g., *Davis v. State*, supra, at 520. The only fundamental rights the defendant had were to be

---

1. " . . . Our concern is with an *independent* right of self-representation. We do not suggest that this right arises mechanically from a defendant's power to waive the right to the assistance of counsel.

. . . On the contrary, the right must be independently found in the structure and history of the constitutional test." (Emphasis original) *Faretta v. California*, supra, n. 15, at 819, 95 S.Ct. at 2533.

represented by counsel and to have an appointed counsel if he were indigent. See, e. g., *Stewart v. State*, Okl.Cr., 495 P.2d 834 (1972). These rights applied to misdemeanors as well as to felonies. See, e. g., *Mure v. State*, Okl.Cr., 478 P.2d 926 (1970). Since *Faretta* establishes that a defendant has an independent fundamental right to forego these two fundamental rights and elect to represent himself, this Court will no longer indulge a presumption against the State so long as the record clearly establishes that the defendant's election was intelligent and voluntary. The defendant is no longer waiving fundamental rights when he represents himself but is merely electing between mutually exclusive fundamental rights. Where the defendant is competent, we interpret *Faretta* as negating a waiver of counsel requirement before a defendant can represent himself. Since there is no waiver, this Court cannot presume against the defendant's electing to represent himself. All previous holdings to the contrary by this Court are specifically overruled.

█ In determining which fundamental right the defendant has chosen to exercise —either the right to retained or appointed counsel, or the right to represent himself —the facts must be reviewed on a case-by-case basis to insure that the election was made in a knowing, intelligent and voluntary manner. Two federal cases arising in Oklahoma, although dealing with waiver of counsel, are applicable.

In *Miles v. United States*, 385 F.2d 541 (10th Cir. 1967), the defendant argued that his plea of guilty could not have been made knowingly, voluntarily and intelligently—required because a guilty plea waives certain fundamental rights—because his previous waiver of counsel was not knowingly, voluntarily and intelligently made. In upholding the waiver of counsel, the appeals court found the defendant "was carefully informed of his right to counsel,

understood that right, and affirmatively declined to avail himself of it." *Miles v. United States*, supra, at 543.

In *Snell v. United States*, 174 F.2d 580 (10th Cir. 1949), the appeals court gave the trial judge the "responsibility of determining whether there is an intelligent and competent waiver [of the right to counsel]. To discharge that duty, the [trial] court must investigate as long and as thoroughly as the circumstances of the case *reasonably demand*." *Snell v. United States*, supra, at 582. (Emphasis added)

█ In applying the above standards to the case at bar, we find that the trial court did not abuse its discretion in finding that the defendant elected to exercise his fundamental right to represent himself. Here, some months before trial, the trial court had appointed counsel for the defendant. The defendant, less than a week before trial was due to begin, sought to replace the court appointed attorney.[2] The trial court explained to the defendant that he had a personal right to court appointed counsel, but no right to a counsel of his choosing. The defendant persisted in his demand that the counsel be replaced and was given the alternative of going to trial with the court appointed counsel or releasing the appointed counsel and representing himself.[3] After the defendant elected to represent himself at trial, he refused an offer by the trial court to appoint the released attorney as standby counsel to sit at the defendant's table during trial to offer the defendant advice if he asked for it.[4] From the record it is clear that the defendant was aware of his rights and elected to proceed *pro se* in a knowing, voluntary and intelligent manner. As this Court stated in *Johnson v. State*, supra, at 1285, that the defendant subsequently renewed his demand for another court appointed counsel and refused to participate at trial in Case No. F–75–176 does not vitiate his election.

---

2. See, *Johnson v. State*, Okl.Cr., 556 P.2d 1285, n. 1, at 1300 (F–76–449 and F–76–450 1976).

3. *Id.* n. 2 at 1285.

4. Id.

**1302** 

 In Case No. F–75–178, the defendant raises as an assignment of error that the trial court, based upon the defendant's failure to put on a defense in Case No. F–75–176, should have appointed standby counsel. In *Stiner v. State*, Okl. Cr., 539 P.2d 750 (1975), this Court first dealt with the *Faretta* decision. It was recognized there that the right to self-representation could be terminated by the trial court. *Stiner v. State*, supra, at 753. "[T]he trial judge may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct." *Faretta v. California*, supra, n. 46, 422 U.S. 806, 95 S.Ct. at 2541, 45 L.Ed.2d at 581. This Court urged the trial courts of Oklahoma to pay particular attention to another section of footnote 46, incorrectly cited as footnote 45 in *Stiner*, which recognizes that a trial court *may*, even over the objection of a defendant, appoint a standby counsel. *Stiner v. State*, supra, at 753. But it was not held in that decision, or in *Johnson v. State*, supra, that a court *must* appoint a standby counsel. Even though this Court *strongly encourages* the appointment of standby counsel, *Johnson v. State*, supra, at 1285, it remains a discretionary matter for the trial court to decide. This Court will not disturb a trial court's action unless there has been a clear abuse of that discretion which has prejudiced the defendant. In the case at bar, this Court fails to see how the appointment of a standby counsel in Case No. F–75–178 was mandated by the defendant's failure to make a defense in Case No. F–75–176. The defendant's action at the first trial showed he had no need for a standby counsel to advise him on the law. At the first trial, he refused to put on any defense. He did not have difficulty putting on a defense through ignorance of the law. Nor would the appointment of a standby counsel have prevented the defendant from sitting mute through the second trial. A standby counsel is not a co-counsel and has no authority to act for the defendant. He is there strictly to advise the defendant. As this Court noted in *Stiner v. State*, supra, at 753, "there is no constitutional right to hybrid representation partially pro se and partially by counsel."

 In Case No. F–75–178, the defendant assigns as error the trial court's exclusion of him from the courtroom without first making him enter the courtroom. This is a frivolous proposition. A defendant has a right to be present during trial, but he may give up that right. In the case at bar, the defendant refused to enter the courtroom and resisted attempts by deputies to place him there.[5] As a result he

---

5. "THE COURT: The court is now in session. These are proceedings in F–75–178. The record can show that the court goes into session at 9:30, the matter being called for trial at 9:30. These proceedings are had in chambers, the two defendants are present out of hearing of any prospective jurors. It has been indicated to the court by one of these two defendants that they do not intend to peacefully accompany the guards into the courtroom immediately adjoining the court's chambers for this trial. I advised both of the defendants then and again at this time, that they have a right to appear in the trial of this case, and as was pointed out previously to them, the right to represent themselves. I will also point out to the defendants that with this right to defend themselves, there also goes with it the obligation to demean themselves as attorneys representing themselves.

"Gentlemen, are you prepared and ready to go into the courtroom to commence this trial?

"MR. PARKER: No, we haven't had a chance to go to the law library until last Monday. We don't know the law, like I told you.

"THE COURT: . . . I will ask you now in the record, and you will note the reporter is present and is taking this down, and it will be preserved for appeal purposes, if needed. Do you desire to attend this trial?

"MR. PARKER: I don't.

 \* \* \* \* \*

"THE COURT: Your name is?

"MR. PARKER: Danny Parker.

"THE COURT: The record can show Lonnie Johnson accompanied the guard peacefully and appears to demean himself properly, and will be present during this trial.

was placed, by force, in a nearby room where he could hear the proceedings. He was free at all times to attend the trial if he so chose.[6] The procedure used by the

"THE COURT: Do you desire to appear at this trial? (Speaking to Mr. Parker)

"MR. PARKER: No, I am not.

"THE COURT: I am not going to presume that you will endeavor to cause trouble. Let the record show that if there is trouble —so far it has been a peaceful and orderly hearing. I will afford you counsel on appeal, if you so desire. Do you want to go into the courtroom now?

"MR. PARKER: No.

"THE COURT: I think you understand that there is sufficient manpower to put you in the courtroom forcefully.

"MR. PARKER: No, sir, there is not.

"THE COURT: Do you desire to hear the trial other than in the courtroom?

"MR. PARKER: Where is that?

"THE COURT: You can be held in the juryroom and hear the trial.

"MR. PARKER: No, sir, I don't want that.

"THE COURT: I am not going to force you to trial. The door is open, your co-defendant is peacefully seated at the counsel table, do you want to attend this trial?

"MR. PARKER: No, not without counsel.

"THE COURT: That is out. Now do you want to attend this trial?

"MR. PARKER: No, not without counsel.

"THE COURT: Can you and do you assure me that if your attendance is forced that you will demean yourself in a proper manner?

"MR. PARKER: No, I am not going to say that, without an attorney.

"THE COURT: Are you saying that you will intentionally disrupt the proceedings in the courtroom?

"MR. PARKER: Not intentionally, but how do you expect me—

"THE COURT: Frankly, I expect you to demean yourself properly in the courtroom.

"MR. PARKER: No, I can't—

"THE COURT: I am going to do this. I am going to instruct you delivered into the courtroom.

"MR. PARKER: Will you put the handcuffs on me?

"THE COURT: At your request you may be handcuffed at this time and all through the trial, but the record will show that you are handcuffed at your request. Are you requesting to be handcuffed at this time?

"MR. PARKER: They will say I am fighting, these people. That is not true.

"THE COURT: It will not be showing anything that isn't true, unless you fight somebody.

"MR. PARKER: I am not going into the courtroom. I am sorry.

"THE COURT: You have a right to be tried sitting in the witness room.

"MR. PARKER: I realize that.

"THE COURT: Is that what you want?

"MR. PARKER: I just want an attorney.

"THE COURT: That is out. Do you want to be tried in the courtroom or jury room?

"MR. PARKER: I don't want to be tried without an attorney.

"THE COURT: You have two choices. Do you want to be tried in the courtroom or elsewhere?

"MR. PARKER: I am not going to make a choice.

"THE COURT: I am going to assume the proper place is in the courtroom. If there is an outbreak, you will be removed and held in the witness room out of the hearing of this jury and out of the trial proceedings. I mention that to you so you will know what you want to do. If you behave you will be allowed in the courtroom, if not, they will remove you to the witness room.

"MR. PARKER: Take me in there in that case—

"THE COURT: Why is that?

"MR. PARKER: Because I want counsel an attorney to go in there with me. I want at least part way a fair trial.

"THE COURT: All right. Mr. Johnson, (speaking to guard) and the officers in charge, I will direct you at this time to escort the defendant into the courtroom. If defendant chooses not to go and resists, then escort him to the witness room and keep him there.

"MR. PARKER: I ain't going in there. There is no way—

"(SCUFFLE ENSUES AS OFFICERS TRY TO FORCE DEFENDANT INTO THE COURTROOM)

"THE COURT: All right Mr. Parker, it has become obvious that you do not want to go into the courtroom. I direct by reason of his direct action that you put him in the witness room and there to hold him pending further order of the court in this case.

"(OFFICERS TAKE MR. PARKER OUT OF CHAMBERS STILL STRUGGLING)"

6. "THE COURT: All right, show these proceedings held in chambers out of the hearing and presence of all prospective jurors. The defendant Parker is returned to the court's chambers from the witness room on the second floor of the courthouse, that being on the same floor as the courtroom, for the purpose of this question.

"Mr. [Parker], a jury has been selected and is ready to be impaneled to try this cause. Your case will be tried to this panel, to this jury. I offer you the opportunity once again

trial court in the case at bar is similar in effect to that recommended by Presiding Judge Brett in his concurring opinion in *Peters v. State*, Okl.Cr., 516 P.2d 1372, 1375 (1973). The trial court had the discretion to seat the defendant in the courtroom, bound and gagged. *Peters v. State*, supra, at 1375. This alternative was offered to the defendant, which was an action *not* obligatory on the part of the trial court, but the defendant refused it. For this Court to hold, as the defendant argues, that the procedure followed by the trial court is reversible error would encourage a defendant to be disruptive and delay a trial indefinitely. This cannot be condoned.

 The defendant's next assignments of error are novel. In Case No. F–75–176, the defendant argues the trial court, by virtue of discharging the defendant's counsel, assumed but failed to perform a duty to insure that the defendant received a fair trial, including raising upon its own motion objections. In Case No. F–75–178, it is said that the duty became stronger because the defendant was not present in the courtroom. These propositions, it seems to this Court, are dressed up arguments of incompetent counsel. This Court notes, as we did in *Johnson v. State*, supra, at 1285, that the defendant cannot argue incompetent counsel as a basis for appeal when he elects to represent himself. See, *Faretta v. California*, supra, n. 46, 422

U.S. at 834, 95 S.Ct. 2525. The trial court *always* has a duty to see that each and every trial is fair. This duty cannot be increased or decreased. A defendant by electing to represent himself cannot force the trial court to become his counsel or co-counsel. In the cases at bar, the trial court went out of its way to help the defendant. In Case No. F–75–178, as noted above, the defendant was not in the courtroom but he could hear the proceedings. He was free to return and participate in the trial. At any time, he could have returned and objected to any evidence or procedure he felt improper. He chose not to do so and cannot now be heard to complain.

 The next assignment of error is that the district attorney during his closing argument improperly remarked upon the defendant's failure to testify in Case No. F–75–178. The statement to which objection is made was a reference to a comment made by co-defendant Johnson, which was broadened slightly during closing argument on the penalty phase of the trial. During cross examination of Highway Patrol Trooper Gene Fitzpatrick, co-defendant Johnson said, "It don't matter to me if I get a million years, but I want the truth to come out, . . ." (Case No. F–75–178, Tr. 86) During closing argument the district attorney said, "If Lonnie Johnson doesn't care if he and Danny Parker don't

to appear in court on your statement that you will properly demean yourself in court.

\* \* \* \* \*

"MR. PARKER: No I don't.

"THE COURT: You have a right to appear in the courtroom for trial, but I don't intend to turn my courtroom into a circus by using force.

"MR. PARKER: I have a right to an attorney.

"THE COURT: I am construing that as a waiver of your right to appear in court. Do you now desire to attend quietly in this trial?

"MR. PARKER: No, I am not waiving it.

"THE COURT: I am offering you a right to appear and demean yourself properly in every stage of the proceedings.

"MR. PARKER: No, I will not without an attorney.

"THE COURT: (To guards) you may return him to the witness room. (GUARDS TAKE PARKER TO WITNESS ROOM)

\* \* \* \* \*

"THE COURT: Let the record show these proceedings again are heard in chambers out of the hearing and presence of the jury following a break for lunch. Present is the defendant, Danny Parker and the court inquires of Mr. Parker, 'If you would like to appear in court for the balance of the trial, with the assurance that no violence will be shown?'

"MR. PARKER: No, not without an attorney."

care if they get a million years. I don't care if they get a million years." (Case No. F–75–178. Tr. 108)

 A careful review of the entire transcript in this case fails to back up the defendant's allegation. In *Kennamer v. State*, 59 Okl.Cr. 146, 57 P.2d 646 (1936), this Court held that the right of argument at trial contemplates a liberal freedom of speech, and the range of discussion, illustration, and argumentation is wide. Counsel for both the State and the defendant have a right to discuss fully from their standpoint the evidence, and any inferences or deductions arising from it. It is *only* when the State is grossly improper and unwarranted upon some point which may have affected a defendant's rights that a reversal will be granted because of improper argument. *Kennamer v. State*, supra, at 664. Accord, *Klinekole v. State*, Okl.Cr., 456 P.2d 623 (1969), and *Wing v. State*, Okl.Cr., 280 P.2d 740 (1955). Without some showing of prejudice, which is entirely lacking in both the record and briefs of this case, this Court cannot say that the district attorney's statement was more than an erroneous slip of the tongue. In any case, the defendant made no objection to the remark at trial and has waived his right to raise the matter in his appeal.

 The defendant's next assignment of error is that evidence of the defendant's prior conviction for forgery was inadmissible to prove the element of a prior offense for the purpose of enhancement of punishment. He argues the conviction was under appeal and not final. The defendant was convicted in Kingfisher County of Forgery in the Second Degree on October 24, 1974, Case No. CRF–74–301. This conviction was not appealed. The informations in the cases at bar were filed on July 10, 1975. The defendant filed an application for post conviction relief in the Kingfisher County District Court, No. PC–75–712, which was denied on October 23, 1975. The defendant appealed the denial to this Court. In November, 1975, the defendant was con-victed in the cases at bar. On December 9, 1975, this Court reversed the denial of the defendant's post conviction petition and remanded it to the District Court for an evidentiary hearing to determine whether the defendant's plea was knowingly and intelligently entered. On January 29, 1976, the District Court held a hearing and again denied post conviction relief. This Court affirmed the denial on April 16, 1976, No. PC–76–130. The defendant cites many cases in support of this assignment of error but mistakenly equates a direct appeal with a post conviction proceeding. In *Yoder v. State*, Okl.Cr., 508 P.2d 1119, 1120 (1973), this Court pinpointed the time when a judgment and sentence becomes final, as follows:

"We are of the opinion the judgment and sentence became final at the point in time the record was not perfected in compliance with this Court's Rule 2.3, subd. A. By the non-compliance with Rule 2.3, subd. A, the non-filing of the designation of record in 10 days, jurisdiction was not established in this Court. Consequently, no issue on the merits of the appeal could be presented rendering the judgment and sentence final at the expiration of the ten-day period. The judgment and sentence then became admissible at the second stage of trial proceedings in a subsequent prosecution for the purpose of enhancing punishment . . ."

If this Court were to adopt the logic the defendant urges, it would render 21 O.S. 1971, § 51, useless and make it almost impossible to ever enhance the punishment of a person convicted after former conviction of a felony. Every time a formerly convicted felon was being tried on a subsequent charge, all he would have to do is file an application for post conviction relief—which is always available after a judgment and sentence even after the sentence is completed—and he could avoid the enhanced sentence. Post conviction proceedings are exactly what the title implies: A right to challenge convictions. A

judgment and sentence may become final for a failure to file a designation of record. See, *Yoder v. State*, supra. However, in all cases when an appeal from a felony conviction has not been perfected in this Court within six (6) months of the rendition of judgment and sentence in the manner provided by law, said judgment and sentence may be used to enhance punishment in a subsequent trial under 21 O. S.1971, § 51; notwithstanding the right to collaterally challenge the conviction under the Post-Conviction Procedure Act, 22 O. S.1971, §§ 1080, et seq.

The defendant's remaining assignments of error—the defendant was not fully advised of the gravity of the charges against him nor the likely consequences of waiving legal counsel, and the accumulation of errors made it error for the trial court to refuse a new trial—are without merit in light of the above holdings.

For all the above and foregoing reasons, the judgments and sentences appealed from are, accordingly, *AFFIRMED*.

BUSSEY, J., concurs.

BRETT, P. J., dissents.

BRETT, Presiding Judge (dissents).

I respectfully dissent to this decision. As I view the record, the defendant did not receive due process of law in his trial. However, in making this evaluation I do not fault the trial judge. He made every effort to assure that the defendant was present in the courtroom and wanted him to have court appointed counsel. But, notwithstanding this, when the defendant is not in the courtroom and has no one in the courtroom to represent his interests, I cannot agree that he received a fair trial.

So far as I know, there are no provisions in our system of jurisprudence which approve the conducting of a trial "in absentia." Admittedly, provisions have been made for the defendant to be placed in another room when he refuses to conduct himself properly, but in such cases some-

one represents his interests in the courtroom. Likewise, I believe *Faretta v. California*, supra, is misapplied in this decision. The record before this Court does not indicate that this defendant elected to represent himself; nor is the record clear that the defendant elected not to have court appointed counsel, except that he did not want the counsel the court appointed for him. Once it became clear that the defendant was not representing himself, the court had a duty to provide him with representation. However, as the trial proceeded this defendant was left without any representation whatsoever. This I cannot approve.