OSCN Found Document:KELLY III v. STATE

 

 
 

 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only

 
 
 

 
 KELLY III v. STATE
2023 OK CR 21
Case Number: F-2021-1390
Decided: 12/21/2023
ALONZO JOHN KELLY III, Appellant v. THE STATE OF OKLAHOMA, Appellee

Cite as: 2023 OK CR 21, __ __

 

 

O P I N I O N

ROWLAND, PRESIDING JUDGE:

¶1 Appellant Alonzo John Kelly III, appeals his Judgment and Sentence from the District Court of Tulsa County, Case No. CF-2016-1521, for First Degree Murder, in violation of 21 O.S.Supp.2012, § 701.7(A). The Honorable Sharon K. Holmes, District Judge, presided over Kelly's jury trial and sentenced him, in accordance with the jury's verdict, to life imprisonment.[1] Kelly appeals raising the following issues:

(1) Whether the trial court committed reversible error in refusing to allow him to exercise his constitutional right to represent himself at trial;

(2) whether he was denied his constitutional and statutory right to a speedy trial;

(3) whether the 'earwitness' identification violated his right to due process;

(4) whether the flight instruction was given in error; and

(5) whether he received the effective assistance of trial counsel.

¶2 Because this case requires relief, we address only the first two propositions which request, respectively, that the case be reversed and remanded for a new trial and that the case be reversed with instructions to dismiss.

1.

¶3 Kelly argues that the trial court's denial of his request to represent himself violated his fundamental right to self-representation as is guaranteed under the Sixth Amendment. Faretta v. California, 422 U.S. 806, 818 (1975); Mitchell v. State, 2016 OK CR 21, ¶ 4, 387 P.3d 934, 937. Under Faretta, a trial court has no discretion to deny a valid request for self-representation. Parker v. State, 1976 OK CR 293, ¶ 5, 556 P.2d 1298, 1300-01 (overruling pre-Faretta cases which held self-representation was a discretionary matter for courts to decide). Violation of the right to self-representation is structural error which can never be harmless. McKaskle v. Wiggins, 465 U.S. 168, 177 n.8 (1984) (The right to self-representation "is either respected or denied; its deprivation cannot be harmless."). The scope of our review is therefore essentially whether Kelly made a valid request for self-representation, which the trial court denied.

¶4 This Court reviews the totality of the circumstances to determine whether there has been a valid waiver of the right to the assistance of counsel. Mitchell, 2016 OK CR 21, ¶ 11, 387 P.3d at 939; Mathis v. State, 2012 OK CR 1, ¶ 7, 271 P.3d 67, 72. The factors considered when making this determination are: (1) whether the defendant was competent to make the decision; (2) whether the request for self-representation was clear and unequivocal; and (3) whether the defendant "knowingly and intelligently" waived the benefits of counsel, after being informed of "the dangers and disadvantages of self-representation." Mathis, 2012 OK CR 1, ¶ 7, 271 P.3d at 72 (citing Faretta, 422 U.S. at 835; Parker, 1976 OK CR 293, ¶¶ 5-6, 556 P.2d at 1300-01; Fitzgerald v. State, 1998 OK CR 68, ¶ 6, 972 P.2d 1157, 1162). It is important to note that "[n]o particular knowledge of law or courtroom procedure is required." Mitchell, 2016 OK CR 21, ¶ 4, 387 P.3d at 937 (citing Coleman v. State, 1980 OK CR 75, ¶ 5, 617 P.2d 243, 245; Faretta, 422 U.S. at 836).

¶5 After a continuance requested by the State, trial was set for August 26, 2019. Three weeks before trial, at a hearing held on August 5, 2019, Kelly's defense counsel was allowed to withdraw from representation due to Kelly's dissatisfaction with him. At this hearing, the trial court noted that Kelly had been filing some of his own motions. The trial court asked Kelly if he intended to represent himself. Kelly replied that he did, and a Faretta hearing was subsequently held on September 4, 2019. At this hearing, Kelly affirmed that he had no physical, emotional, or other impediments that would operate to prevent him from understanding the Faretta hearing. The trial court explained the purpose of defense counsel and advised Kelly that he would be held to the same standard as an attorney. The trial court explained the seriousness of the charge, and why self-representation would not be a good idea. The trial court discussed voir dire with Kelly and explained that he would not have access to the same resources as an attorney. The trial court warned him of the danger of not understanding the evidence code or how to make proper objections. Toward the end of the hearing Kelly agreed that self-representation was probably not a good idea. When asked to convince the trial court why he should represent himself, Kelly responded, "Well, I guess I can't." While still strenuously advising against self-representation, the trial court told Kelly that it would appoint him new counsel if he wanted. Kelly abandoned his request to proceed pro se and agreed to accept another appointed attorney.

¶6 Kelly was appointed new counsel in September of 2019. Despite this representation, Kelly continued to file numerous pro se motions. On October 14, 2020, Kelly filed a pro se affidavit concerning his court appointed counsel in which he outlined numerous alleged failings of counsel. A few days later he filed a document titled "John Kelly's Marsden Motion" in which he alleged that he was not receiving effective assistance of counsel. Subsequently, on November 9, 2020, a few weeks before trial which had been set for November 30, 2020, Kelly filed a notice of his intent to waive the assistance of counsel and proceed to trial pro se. Pursuant to his request, a second Faretta hearing was held on November 12, 2020.

¶7 At this Faretta hearing Kelly explained that he was waiving his right to counsel because he was not receiving effective assistance of counsel. He explained that counsel was not communicating with him and he complained that he did not know what was going on with his case. He stated that he did not intend to slow the trial because it had been going on for too long. The trial court asked Kelly about his educational background and Kelly responded that he had dropped out of school in ninth grade, but he continued to educate himself. Again, the trial court warned him extensively about the dangers of self-representation without formal legal education and experience. The trial court asked Kelly to explain his knowledge of voir dire and the sequence of events at trial. The trial court also asked him to discuss possible objections and his understanding of the hearsay rule. The court noted that Kelly gave pretty good answers to these questions.

¶8 Nevertheless, the trial court continued to warn Kelly about the dangers of self-representation and stated that it did not believe he was equipped to represent himself in a murder trial. While the trial court acknowledged that he had an "absolute right" to represent himself and that he had answered some of the questions correctly, it noted the short time until trial and the court's obligation to move the matter through effectively and efficiently. The court explained the limitations of stand-by counsel and stated its concern that Kelly was not capable and "competent as an attorney" to represent himself. Kelly did not back down from his request to proceed pro se. Instead, he continued to explain his dissatisfaction with his counsel. Despite his protestations, the trial court stated:

I'm still not inclined to let you represent yourself, Mr. Kelly, because I'm not sure you'd know how to handle these situations. And I'm not trying to be disrespectful to you in any way. We all have our crafts. We all have our jobs. And I'm not going to forget that you have the right to represent yourself, you absolutely do, but the case law will tell you that I need to feel comfortable that you're competent to do that. And like I said, I'm using "competent" in the legal sense. You have to be able to maneuver your way through a legal procedure. I don't feel that you're able to do that.

¶9 After continuing to warn Kelly about the dangers of self-representation, the trial court, over Kelly's adamant protestation and insistence that he be allowed to exercise his right to represent himself, denied his request.

¶10 The State argues that the trial court could reasonably have concluded that Kelly's invocation of his right to self-representation was equivocal because he had previously acquiesced to the appointment of counsel and requested the appointment of conflict counsel. It also asserts that this denial was proper because Kelly engaged in obstructionist conduct and his request was simply a tactic to secure delay.

¶11 While Kelly acquiesced to the appointment of new counsel at his first Faretta hearing, and he subsequently requested the appointment of conflict counsel, both of these instances occurred before his second request to waive his counsel and proceed pro se, a request to which he strongly adhered at the second Faretta hearing. Furthermore, while Kelly did, as the State asserts, eventually refuse to cooperate with his appointed attorney, the noted instances of "obstructionist conduct" appear to have occurred after the denial of his second request to proceed pro se. Kelly's behavior subsequent to the denial of his second request cannot be used as the basis upon which to justify the initial ruling against his request. Cf. Mitchell, 2016 OK CR 21, ¶ 4, 387 P.3d at 937-38 ("The possibility that a defendant may later disrupt a trial is not a reason to deny self-representation before any disruption has occurred.").

¶12 Additionally, while the State asserts that Kelly's requests to proceed pro se were tactical attempts to delay the trial, the record does not support this assertion. While each of Kelly's two requests to proceed pro se were filed weeks before trial, he did not indicate that he would need a continuance. Rather, he noted at the second Faretta hearing:

I don't intend to -- I want to make it clear, I don't intend to slow trial up or none of that, because I've been here too long. This case has been going on too long, and I'm just feeling like I have to do what I have to do.

¶13 Indeed, this Court has held that a motion for self-representation was well-taken where nothing suggested delay of trial would have resulted from granting the motion. Coleman, 1980 OK CR 75, ¶ 6, 617 P.2d at 245.

¶14 Finally, the State asserts that while the district court "clearly took [Kelly's] right of self-representation seriously, [it] just as clearly found that Kelly's conduct warranted a denial of self-representation." To the contrary, while it is abundantly clear from the record that the trial court did take Kelly's assertion of his right to represent himself seriously, it is also abundantly clear that the trial court did not deny this request based upon Kelly's conduct. Rather, as noted above, the trial court denied his request upon its finding that Kelly did not possess the legal knowledge necessary to maneuver through a complex first-degree murder trial. This is not the appropriate test:

The test whether a defendant has intelligently elected to proceed [p]ro se is not the wisdom of the decision or its effect upon the expeditious administration of justice. It is only necessary that a defendant be made aware of the problems of self-representation so the record establishes that he understands that his actions in proceeding without counsel may be to his ultimate detriment. Under Faretta v. California, [422 U.S. at 836] . . . the defendant's technical knowledge of the law and its operation at trial is totally irrelevant in the assessment of his knowing exercise of the right to defend himself.

Johnson v. State, 1976 OK CR 292, ¶ 34, 556 P.2d 1285, 1294 (emphasis added).

¶15 The record in the present case shows that Kelly was competent to make the decision to proceed pro se; he was questioned extensively about his knowledge of the trial process, and he gave coherent answers. His second request for self-representation was, ultimately, clear and unequivocal; he was, at the close of the hearing, unwavering in his expressed desire to proceed pro se, even after being strongly advised against it. Finally, he knowingly and intelligently waived the benefits of counsel after being informed of the dangers and disadvantages of self-representation. Kelly indicated that he knowingly accepted the risks of his decision. While we acknowledge and fully understand that the trial court had the best of intentions, and we recognize the court's attempt to save Kelly from himself, the law is clear, and considering the totality of the circumstances, we find that the trial court's denial of Kelly's request to represent himself was error which requires reversal.

2.

¶16 Kelly argues that he was denied his constitutional right to a speedy trial. We review Sixth Amendment speedy trial claims de novo, applying the four balancing factors established in Barker v. Wingo, 407 U.S. 514, 530 (1972). See Lott v. State, 2004 OK CR 27, ¶ 7, 98 P.3d 318, 327. The four balancing factors to be weighed are: (1) the length of delay; (2) the reason for the delay; (3) the defendant's assertion of his rights; and (4) the prejudice to the defendant. Barker, 407 U.S. at 530. "These are not absolute factors, but are balanced with other relevant circumstances in making a determination." Lott, 2004 OK CR 27, ¶ 7, 98 P.3d at 327. Under this approach we must balance the conduct of both the prosecution and the defendant. Barker, 407 U.S. at 530. Considering all four of these factors in the present case, we find that Kelly was not denied his right to a speedy trial.

¶17 Kelly further challenges the trial court's failure to hold a hearing pursuant to 22 O.S.2011, § 812.1 and 22 O.S.2011, § 812.2. Section 812.1 requires the district court to hold a hearing, as provided in Section 812.2, whenever any person charged with a crime and held in custody solely by reason thereof is not brought to trial within one year of arrest or is charged with a felony crime and held to answer on an appearance bond but is not brought to trial within eighteen months after arrest. In the present case, Kelly requested, and was granted, a hearing to prevent unnecessary delay of his right to a timely and speedy trial in his response to the State's motion for a continuance. Kelly did not request any other review hearings under Section 812.1(A) or object to the trial court's failure to hold any. Thus, we review this claim for plain error only, and find no actual or obvious error affecting Kelly's substantial rights. This assignment of error is denied.

DECISION

¶18 The Judgment and Sentence of the district court is REVERSED and the case is REMANDED FOR A NEW TRIAL. Appellant's application for evidentiary hearing on Sixth Amendment claims is DENIED. Pursuant to Rule 3.15, Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch. 18, App. (2023), the MANDATE is ORDERED issued upon delivery and filing of this decision.

AN APPEAL FROM THE DISTRICT COURT OF TULSA COUNTY,
THE HONORABLE SHARON K. HOLMES, DISTRICT JUDGE

 
 
 
 APPEARANCES AT TRIAL

 BRIAN MARTIN
 ATTORNEY AT LAW
 1331 SOUTH DENVER AVE.
 TULSA, OK 74119
 COUNSEL FOR DEFENDANT
 
 
 APPEARANCES ON APPEAL

 JAMES H. LOCKARD
 DEPUTY DIVISION CHIEF
 HOMICIDE DIRECT APPEALS
 DIVISION
 OKLAHOMA INDIGENT DEFENSE
 P.O. BOX 926
 NORMAN, OK 73070
 COUNSEL FOR APPELLANT
 
 
 
 
 KENNETH ELMORE
 ASST. DISTRICT ATTORNEY
 500 SOUTH DENVER AVE.
 TULSA, OK 74103
 COUNSEL FOR STATE
 
 
 JOHN M. O'CONNOR
 ATTY. GENERAL OF OKLAHOMA
 THEODORE M. PEEPER
 ASSISTANT ATTORNEY GENERAL
 313 N.E. 21ST STREET
 OKLAHOMA CITY, OK 73105
 COUNSEL FOR APPELLEE
 
 
 

 

OPINION BY: ROWLAND, P.J.
HUDSON, V.P.J.: Concur
LUMPKIN, J.: Concur
LEWIS, J.: Specially Concur
MUSSEMAN, J.: Concur

FOOTNOTES

[1] Under 21 O.S.Supp.2015, § 13.1, Kelly must serve 85% of his sentence of imprisonment before he is eligible for parole consideration.

 

 

LEWIS, J., SPECIALLY CONCUR:

¶1 The question here is not the wisdom of the decision or its effect upon the expeditious administration of justice. The right of self-representation is not limited by the type of trial, and a competent individual may waive counsel for any type of trial, even a capital murder trial. Brown v. State, 2018 OK CR 3, ¶ 85, 422 P.3d 155, 172-73. The record clearly shows that Appellant was competent to make the decision to represent himself in the sense that he was capable of rational and actual understanding of the proceedings against him. See Fitzgerald v. State, 1998 OK CR 68, ¶ 6, 972 P.2d 1157, 1162.

[A]n "intelligent" decision to waive counsel and proceed pro se is not the same as a "smart" or well-thought decision. The issue is whether the defendant was adequately informed and aware of the significance of what he was giving up, by waiving the right to be represented by counsel.

Mathis v. State, 2012 OK CR 1, ¶ 8, 271 P.3d 67, 72. Even when a defendant's expectations about his case and defenses are unrealistic and foolish, a defendant may still be granted the right to choose self-representation. Brown, 2018 OK CR 3, ¶ 16, 422 P.3d at 163. The only necessity is that a defendant be made aware of the problems of self-representation so the record establishes that he understands that his actions in proceeding without counsel may be to his ultimate detriment. Id.; see also Maynard v. Boone, 468 F.3d 665, 678 (10th Cir. 2006). "A defendant's technical legal knowledge is totally irrelevant in the assessment of his knowing exercise of the right to represent himself." Brown, 2018 OK CR 3, ¶ 42, 422 P.3d at 166.

¶2 The record is quite clear here, the trial court unquestionably warned Appellant of the pitfalls of self-representation and made it clear that his decision was not a positive decision. The record supports the fact that he was competent to make a well-informed decision to represent himself. The trial court erred in taking that right from him.

 

 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Criminal Appeals Cases

 
Cite
Name
Level

 
2004 OK CR 27, 98 P.3d 318, 
LOTT v. STATE
Discussed at Length

 
2012 OK CR 1, 271 P.3d 67, 
MATHIS v. STATE
Discussed at Length

 
2016 OK CR 21, 387 P.3d 934, 
MITCHELL v. STATE
Discussed at Length

 
2018 OK CR 3, 422 P.3d 155, 
BROWN v. STATE
Discussed at Length

 
1980 OK CR 75, 617 P.2d 243, 
COLEMAN v. STATE
Discussed at Length

 
1998 OK CR 68, 972 P.2d 1157, 69 OBJ 4307, 
Fitzgerald v. State
Discussed at Length

 
1976 OK CR 292, 556 P.2d 1285, 
JOHNSON v. STATE
Discussed

 
1976 OK CR 293, 556 P.2d 1298, 
PARKER v. STATE
Discussed at Length

Title 21. Crimes and Punishments

 
Cite
Name
Level

 
21 O.S. 13.1, 
Required Service of Minimum Percentage of Sentence - Offenses Specified
Cited

 
21 O.S. 701.7, 
Murder in the First Degree
Cited

Title 22. Criminal Procedure

 
Cite
Name
Level

 
22 O.S. 812.1, 
Time Limit to Begin Trial
Cited

 
22 O.S. 812.2, 
Time Limit to Begin Trial - Process for Review
Cited

 
 

 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA